145 P.3d 812

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Philip Kala KEKUEWA, III, Defendant–Appellant.**

**No. 27248.**

Intermediate Court of Appeals of Hawai'i.

Aug. 10, 2006.

Certiorari Granted Dec. 14, 2006.

**270**

Carmel A. Kwock, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Sonja P. McCullen, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., LIM and NAKAMURA, JJ.

Opinion of the Court by LIM, J.

Philip Kala Kekuewa, III (Defendant or Kekuewa) appeals the March 22, 2005 judgment of the District Court of the First Circuit (district court) [1] that convicted him of speeding, driving without a license (DWOL) and driving under the influence of an intoxicant (DUI).[2]

On appeal, Defendant challenges only his DUI conviction. He attacks the oral accusation, which charged him with DUI "for your

1. The Honorable William A. Cardwell presided.

2. The statute in effect at the time of the arrest, Hawaii Revised Statutes (HRS) § 291E–61 (Supp.2003) provided, in pertinent part:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant [ (DUI)] if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

(2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;

(3) With .08 or more grams of alcohol per two hundred ten liters of breath; or

(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

(b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation or suspension of sentence:

(1) For the first offense, or any offense not preceded within a five-year period by a conviction for an offense under this section or section 291E–4(a):

(A) A fourteen-hour minimum substance abuse rehabilitation program, including education and counseling, or other comparable program deemed appropriate by the court;

(B) Ninety-day prompt suspension of license and privilege to operate a vehicle during the suspension period, or the court may impose, in lieu of the ninety-day prompt suspension of license, a minimum thirty-day prompt suspension of license with absolute prohibition from operating a vehicle and, for the remainder of the ninety-day period, a restriction on the license that allows the person to drive for limited work-related purposes and to participate in substance abuse treatment programs;

(C) Any one or more of the following:

(i) Seventy-two hours of community service work;

(ii) Not less than forty-eight hours and not more than five days of imprisonment; or

(iii) A fine of not less than $150 but not more than $1,000; and

(D) A surcharge of $25 to be deposited into the neurotrauma special fund;

(2) For an offense that occurs within five years of a prior conviction for an offense under this section or section 291E–4(a) by:

(A) Prompt suspension of license and privilege to operate a vehicle for a period of one year with an absolute prohibition from operating a vehicle during the suspension period;

(B) Either one of the following:

(i) Not less than two hundred forty hours of community service work; or

(ii) Not less than five days but not more than fourteen days of imprisonment of which at least forty-eight hours shall be served consecutively;

(C) A fine of not less than $500 but not more than $1,500; and

(D) A surcharge of $25 to be deposited into the neurotrauma special fund;

(3) For an offense that occurs within five years of two prior convictions for offenses under this section or section 291E–4(a):

(A) A fine of not less than $500 but not more than $2,500;

(B) Revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years;

(C) Not less than ten days but not more than thirty days imprisonment of which at least forty-eight hours shall be served consecutively; and

(D) A surcharge of $25 to be deposited into the neurotrauma special fund[.]

HRS § 291E–61 has since been amended several times in respects immaterial to this appeal. *Cf.* HRS § 291E–61 (Supp.2005).

second offense." Defendant contends this was insufficient under *State v. Domingues,* 106 Hawai'i 480, 107 P.3d 409 (2005) (*per curiam* ), in which the supreme court denominated "an offense that occurs within five years of a prior conviction for an offense under this section[,]" Hawaii Revised Statutes (HRS) § 291E–61(b)(2) (Supp.2003), an attendant circumstance and thus an essential element of the DUI offense that has to be alleged in the accusation under pain of dismissal as defective. Following *Domingues,* we agree with Defendant and reverse the judgment insofar as it convicted him of DUI. We therefore do not reach Defendant's challenge to the sufficiency of the DUI evidence adduced at trial.

## I. Background.

### A.

At the beginning of the bench trial, the deputy prosecuting attorney (DPA) read the oral charge to Defendant. The October 11, 2004 transcript reads as follows:

Mr. Kekuewa, on or about the 15th day of April 2004, in the City and County of Honolulu, State of Hawaii, island of Oahu, you did operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair your normal mental faculties or the ability to care for yourself and guard against casualty thereby violating Section 291E–61 of the Hawaii Revised Statutes for your second offense.

On that same date, 15th day of April, 2004, you did, in the City and County of Honolulu, State of Hawaii, operate or permit the operation of or cause the operation of (indiscernible) the vehicle on a public highway without a current official certificate of inspection in violation of Section 286–25, Hawaii Revised Statutes.

And on or about that same day, the 15th of April 2004, you did, in the City and County of Honolulu, State of Hawaii, you did operate a motor vehicle without first being appropriately examined and duly licensed as a qualified driver of that vehicle in violation of Section 286–102 of the Hawaii Revised Statutes. That's your third offense for driving without a license.

And sir, on that same day in the City and County of Honolulu, State of Hawaii, you did drive a vehicle at a speed greater than the maximum speed limit stated on signs placed by the director of transportation with respect to highways under the director's jurisdiction by traveling at a speed of 88 miles per hour in a 50–mile–per–hour zone thereby violating Section 291C–102( [b] ) of the Hawaii Revised Statutes. Do you understand those charges?

Immediately after reading the charges, the DPA moved to *nolle prosequi* what the record indicates were insurance and registration citations. The district court dismissed those charges.

### B.

Testimony during the State's case revealed the following. On April 15, 2004, at about 1:45 in the morning, a police officer facing east on Kalaniana'ole Highway waiting to make a left turn saw a lone, black Dodge pickup truck heading in the opposite direction onto the H–1 freeway. "In my opinion, it was way excess of the 35–mile–per–hour speed limit." The officer made a U-turn and pursued, but the truck was pulling away from him "at a very high rate of speed."

The officer radioed ahead to another police officer he knew was stationed there. The other officer was parked on the Wai'alae Avenue overpass and lasered the truck going 88, then 80, miles per hour on the freeway, where the speed limit is 50 miles per hour. The pursuing officer activated his lights and siren and continued the chase, attaining 115 miles per hour in the process. He noticed the truck weaving within its lane. With the aid of two other patrol cars, the pursuing officer was able to box in and pull the truck over just before the University of Hawai'i off-ramp.

The three police officers approached the truck and discovered Defendant in the driver seat and another man in the passenger seat. The truck's license plate read "PKK3RD." Because the height of the lifted truck and its tinted windows prevented a side view of the interior, Defendant was asked to open his

door and alight from the vehicle. Complying, Defendant appeared to fumble with the lock. Upon request, Defendant was able to provide documentation of insurance and registration. Defendant could not, however, produce a driver's license, and later told the officers that he did not have one.

Among the three of them, the police officers observed that Defendant's face was flushed and his eyes were red, watery, bloodshot and glassy. A very strong odor of alcohol emanated from him. He was "very unsteady on his feet." One of the officers thought Defendant was going to fall several times. When the same officer told Defendant he was being stopped for speeding, Defendant responded "huh," and his voice "appeared slurred, very slurred." The officer opined that Defendant was under the influence of alcohol.

The police placed Defendant and his passenger in separate patrol cars and transported them to the law school parking lot, where yet another police officer administered some field sobriety tests to Defendant. That officer noticed Defendant's eyes were red, glassy and watery. A strong odor of an alcoholic beverage was on his breath. While awaiting the tests, Defendant rested his head on the officer's patrol vehicle.

On the walk-and-turn test, Defendant could not keep his balance during the instructional phase of the test. He started the test too soon, took eleven instead of nine steps in each direction, and on the eleventh step going, asked, "oh, what now, what I gotta do[?]" Also, Defendant failed to put heel to toe on both the ninth step going and the tenth step returning. On the one-leg-stand test, a thirty-second exercise, Defendant raised his left foot for ten seconds, put it down, then raised his right foot for ten seconds. For the last ten seconds of the test, Defendant just left both feet down. Based on Defendant's performance on the tests, the administering officer opined that Defendant was impaired and in no condition to drive his truck.

The administering officer placed Defendant under arrest for DUI. Although Defendant had been "extremely cooperative" and willing to take the field sobriety tests, he became "very uncooperative" at the police station. Defendant was yelling and upset, and refused to acknowledge the administering officer as the officer read him the implied consent forms.

## C.

Just before the State rested, the district court admitted State's exhibit 1 showing that Defendant did not have a driver's license on the day of the incident. Then the DPA proffered State's exhibit 3:

[DPA]: Well, at this time, we would ask to move into evidence the certified court abstract of [Defendant] as a self-authenticating certified public record. I mean, a self-certification, self-certified record, your Honor.

[DEFENSE COUNSEL]: For what purpose?

[DPA]: This is for the purpose of, under State vs (indiscernible) and that is the——

THE COURT: He's referring to *Domingus* [sic].[3]

[DPA]: *Domingus* [sic], thank you. For proving the elements of the prior offense in the case-in-chief rather than at sentencing.

[DEFENSE COUNSEL]: Your Honor, we would object as, first of all, there's other additional charges and convictions on this abstract that is [sic] irrelevant, prejudicial, and essentially, this is hearsay, your Honor. We would object to this entire abstract coming in.

THE COURT: Well, the *Domingus* [sic] case makes it very clear that if you are charging someone under 291E–61 as a subsequent offense that it must be alleged and proven at trial that it is a subsequent offense, that is a second within five years or a third within five years. If this is certified—you agree that this is a certified document?

[DEFENSE COUNSEL]: It has a seal on it, your Honor, but we would object to all this other information coming in.

3. Presumably, *State v. Domingues*, 106 Hawai'i 480, 107 P.3d 409 (2005).

THE COURT: Well, that's my next step. If you agree that it's a certified document and you agree it's a public record, it is both self-authenticating and is not hearsay under the public records exception to the hearsay rule, so it's not hearsay. There's an exception for public record and it is self-authenticating if it's certified, that is under seal, and if the purpose for this is to introduce evidence as to the subsequent DUI and the subsequent driving without license—is that purpose for this?

[DEFENSE COUNSEL]: It's not to——

THE COURT: And I will consider only those items in there going to that issue. I will not consider any of the other matters in the abstract.

(Footnote supplied.) The district court admitted State's exhibit 3. The State then proffered State's exhibit 2, a "certified court calendar from July 21st, 2003 for [Defendant] regarding a[sic] arrest and conviction for DUI under 291E–61," which the district court admitted for the same limited purpose and over the same defense objections.

After the State rested, Defendant moved for a judgment of acquittal on all charges. The district court acquitted Defendant of the safety check charge, as there was no evidence admitted at trial to support it, but denied the motion as to the speeding, DWOL and DUI charges.

### D.

After Defendant's passenger indicated he would take the Fifth if called to testify, Defendant took the stand as the only witness in his defense. Defendant testified that he spent the day at Sandy Beach, starting at about ten in the morning. He surfed for three hours, then barbequed and drank beer, about a six pack, until six or seven in the evening. His sister dropped him off at the residence of his close friend—the passenger as described by the police—where he stayed for a couple of hours. At about ten, Defendant went out to the truck and fell asleep reclined in the passenger seat.

At one or one-thirty in the morning, Defendant awoke to his friend "whacking me,

waking me up." His friend was driving the truck somewhere near the University of Hawai'i.

Cause he said the cops, the cops. And I said what did you do? He said I don't know, but I got a warrant, da-da-da-da-da, that's it so.

. . . .

Tired, I was kine'a disoriented. I was like, what, I didn't know what was going on.

. . . .

I seen lights and everything. He put it in park and told me, brah, I got a warrant, brah, just hop over, da-da-da-da-da. I said what, and I kine'a swore at him and I hopped over and that's what happened.

When asked why he switched seats, Defendant answered, "Cause he's a friend, but I was stupid."

Defendant estimated that the switch took five to ten seconds. He opined that the police officer who had boxed the truck in from the front could not have seen them switch because the officer was in the process of getting out of his patrol car when the switch went down. Defendant ascribed his red, glassy eyes to the three hours of surfing he did that day. Also, he was tired. Defendant denied stumbling or swaying. Defendant denied admitting to a police officer that he was the driver of the truck.

Defendant claimed that he took the field sobriety tests and passed. The administering officer was "kine'a like amazed" that Defendant had passed, but he made Defendant do the tests again. When Defendant protested that he had passed again and the officer again agreed,

the sergeant came up and said no, no, no, F, he started swearing and said no, no, no, give him the F-ing breath test.

. . . .

He started swearing. He said you're F-ing around and you bullshit, and I told 'em, eh I got asthma. He said well, I don't give a F, shit, whatever, blow. The third time I blew, he said, arrest his F-ing ass.

Defendant claimed that he passed the breath test, too, but was arrested anyway. When he

was being handcuffed, he told a police officer that he was not the driver of the truck. At the police station, Defendant asked for a phone call and a lawyer. "No. They told me B.S. you're not getting anything."

In rebuttal, the State called the police officer who administered the preliminary alcohol screening (PAS) breath test to Defendant. The PAS officer remembered:

> When I offered him the preliminary alcohol screening, which he initialed, agreed to sign, he was kind of playing around with the machine. By that I mean, he was pretending to blow to the machine. He was kind of hyperventilating to the machine. I guess he was sucking air in instead of blowing air out. So, he was just pretty much pretending to blow. That's when I was telling him, sir, you don't have to do this, I mean, it's strictly voluntary.

The PAS officer testified that Defendant "blew" into the PAS device three times, but the reading came out "void double zero six" indicating an insufficient sample.

The PAS officer also recalled that Defendant admitted being the driver of the truck. The PAS officer detailed additional admissions by Defendant:

> While I was offering him the PAS, like in between when I was giving him break, finally get him to properly do a PAS, he was saying the words of that he's gonna continue driving drunk and that next time he won't stop for the police, and that he didn't have a license on him, when I was asking for his license during the PAS cause we have to put his name down on the form.

### E.

After the close of all evidence, Defendant brought alternative motions, both of which the district court denied:

[DEFENSE COUNSEL]: May I make a motion to dismiss at this time?

THE COURT: Sure.

[DEFENSE COUNSEL]: Your Honor, at this point, I would like to make—well, first of all, I'd like to make a motion for mistrial. At the close of the prosecutor's case, they successfully admitted into evidence proof of my client's abstract indicating that he had a prior DUI and, I guess, according to the *Domingus* [sic] case, in their case-in-chief, the prosecutors, I guess, are allowed to prove, or admit into evidence, evidence of a prior DUI.

THE COURT: The *Domingus* [sic] case says they're required to.

[DEFENSE COUNSEL]: Well——

THE COURT: It is not a sentencing matter, that they're required to——

[DEFENSE COUNSEL]: Well, your Honor, we just wanna lay on the record, we're aware of *Domingus* [sic], but we would wanna place on the record that any evidence of a prior DUI is not an element of the offense of Hawaii Revised Statutes 291E–61, and our position is that these are matters to be handled at sentencing your Honor. I realize that——

THE COURT: Have you read *Domingus* [sic]?

[DEFENSE COUNSEL]: I have read *Domingus* [sic].

THE COURT: So, you're arguing the supreme court's wrong?

[DEFENSE COUNSEL]: Well, I'm just arguing the Public Defender's position, your Honor.

THE COURT: Well, you understand *Domingus* [sic] is directly contrary to what you're arguing?

[DEFENSE COUNSEL]: Yes, your Honor. In the alternative, we would submit that *Domingus* [sic] outlines that these are attendant circumstances that the prosecution has to prove. Prove that one, he's guilty beyond a reasonable doubt of a DUI charge, a second DUI charge. An attendant circumstance which is, I guess, an element of the charge.

Now, at this time, we would like to make a motion to dismiss based on a defective charge. The prosecutor did not specify the attendant circumstances in the complaint what he orally charged my client, your Honor. So, based on that, the prosecutor's failure to outline the attendant circumstance in his oral charging of my client, we ask the Court to dismiss the case based on a defective charge.

THE COURT: Well, in fact, my notes reflect that at the time of arraignment he, in fact, did charge, arraign him as a second and did include the attendant circumstances. That's my specific note that I'm looking at right now. Therefore, I will deny that motion based on that.

After entertaining closing arguments, the district court found that the State had proved the DUI charge and,

> that they have proved the attendant circumstance that this was a second offense within a five-year period, and that the prior conviction was counseled at the time of the plea, and in fact, the change of plea form was filed in court on the prior conviction and therefore the colloquy was done.

The district court also found Defendant guilty of DWOL, and liable on the speeding charge. During defense counsel's sentencing argument, the district court told him, "for sentencing, you'd better assume he was [driving] because that's what I found, and frankly, I don't believe your client. I do believe the officers."

The district court sentenced Defendant on the DUI charge to ten days in jail and a thousand dollar fine, among other things. The district court stayed execution of its sentence pending appeal.

## II. Standards of Review.

■ " 'Whether an indictment or complaint sets forth all the essential elements of a charged offense is a question of law,' which we review under the *de novo*, or 'right/wrong,' standard." *State v. Merino*, 81 Hawaiʻi 198, 212, 915 P.2d 672, 686 (1996) (brackets and ellipsis omitted) (quoting *State v. Wells*, 78 Hawaiʻi 373, 379, 894 P.2d 70, 76 (1995) (citations omitted)).

"The failure of an accusation to charge an offense may be raised 'at any time during the pendency of the proceedings[.]' [Hawaiʻi Rules of Penal Procedure (HRPP) Rule] 12(b)(2) (1995); *see also State v. Motta*, 66 Haw. 89, 90, 657 P.2d 1019, 1019–20 (1983)." *Merino*, 81 Hawaiʻi at 212, 915 P.2d at 686

(some brackets in the original). *See also* HRPP Rule 12(b)(2) (2005).

In *Motta*, the supreme court adopted a rule of liberal construction of charges challenged for the first time on appeal. *Motta*, 66 Haw. at 90, 657 P.2d at 1020. "Our adoption of this liberal construction standard for post-conviction challenges to indictments means we will not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." *Id.* at 91, 657 P.2d at 1020.

"In the present case, however, the alleged deficiency in the indictment was raised by a timely motion. The liberal construction rule laid down in *Motta* with respect to such contentions when raised after conviction is therefore inapplicable." *State v. Robins*, 66 Haw. 312, 314, 660 P.2d 39, 41 (1983).

## III. Discussion.

### A.

Defendant advances two points of error on appeal. Defendant contends the oral accusation, which charged him with DUI "for your second offense[,]" was defective under *Domingues* because the attendant circumstance of "an offense that occurs within five years of a prior conviction for an offense under this section[,]" HRS § 291E–61(b)(2), an essential element of the DUI offense, was not fully stated. Hence, Defendant avers, the district court was wrong not to grant his oral motion to dismiss the DUI charge. Defendant also contends there was insufficient evidence to support his DUI conviction.

### B.

■ Defendant was orally charged and his bench trial commenced on October 11, 2004. The trial continued on March 14, 2005 and concluded on March 21, 2005. In the interim, on February 22, 2005, the supreme court issued its *Domingues* opinion. The *Domingues* court determined that the "prefatory language of HRS § 291E–61(b)(1) [ (Supp.2001) ] through HRS § 291E–61(b)(4) [ (Supp.2001) ][4] describes attendant circum-

---

4. As noted by the *Domingues* court,

Effective January 1, 2004, the legislature amended HRS § 291E–61 by deleting the felo-

stances, *see* HRS § 702–205 (1993),[5] that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E–61 [ (Supp. 2001) ] as a whole describes." *Domingues*, 106 Hawai'i at 487, 107 P.3d at 416 (footnotes supplied). Accordingly, such aggravating circumstances "*must* be alleged in the charging instrument in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact." *Id.* at 487–88, 107 P.3d at 416–17 (brackets, citations, internal quotation marks and block quote format omitted; emphasis in the original).

Therefore, Defendant contends, *State v. Cummings*, 101 Hawai'i 139, 142, 63 P.3d 1109, 1112 (2003) (DUI conviction reversed because "the complaint failed to allege that [Cummings] was under the influence of intoxicating liquor *in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty* " (internal quotation marks omitted; emphasis in the original)), controls. We agree.

 "It is well settled that an 'accusation must sufficiently allege all of the essential elements of the offense charged,' a requirement that 'obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint.'" *Id.*

(original brackets, citation and block quote format omitted) (quoting *State v. Jendrusch*, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)). " 'A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process.' " *Id.* (citation and block quote format omitted) (quoting *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244). Furthermore, "that requirement is not satisfied by the fact that the accused actually knew [the essential elements of the offense charged] and was not misled by the failure to sufficiently allege all of them." *Id.* at 143, 63 P.3d at 1113 (block quote format omitted) (quoting *State v. Israel*, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995)). "Moreover, citing to a statutory reference does not cure a charge that merely states an element of the offense in generic terms." *Id.* (citing *State v. Elliott*, 77 Hawai'i 309, 311, 884 P.2d 372, 374 (1994)).

It cannot fairly be stated, however, that the oral charge in this case completely omitted the entire attendant circumstance, and we acknowledge the case the State cites in answer on appeal,[6] *State v. Sprattling*, 99 Hawai'i 312, 320–21, 55 P.3d 276, 284–85 (2002) (upholding an oral accusation which omitted the modifier "bodily" from a charge of assault in the third degree[7]). The *Sprat-*

---

ny offense previously described in subsection (b)(4). *See* 2003 Haw. Sess. L. Act 71, § 3 at 125–26. Nevertheless, Act 71 also recodified HRS § 291E–61(b)(4) as a "separate offense" under HRS § 291E–61.5, entitled "[h]abitually operating a vehicle under the influence of an intoxicant." *See* 2003 Haw. Sess. L. Act 71, § 1 at 123–24. The significance of this amendment was to separate the felony offense from the apparent assortment of petty misdemeanor offenses codified in HRS §§ 291E–61(b)(1) through 291E–61(b)(3). *See* Hse. Conf. Com. Rep. No. 18, in 2003 House Journal, at 1706–07; Sen. Conf. Com. Rep. No. 18, in 2003 Senate Journal, at 953–54.
*Domingues*, 106 Hawai'i at 482 n. 1, 107 P.3d at 411 n. 1 (brackets in the original).

5. HRS § 702–205 (1993) provides:

> The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
> (a) Are specified by the definition of the offense, and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

6. Actually, the State's primary argument on appeal is that *Domingues's* designation of certain prior DUI convictions as essential elements intrinsic to a DUI offense that must be alleged in the charge and determined by the trier of fact, *Domingues*, 106 Hawai'i at 487–88, 107 P.3d at 416–17, cuts directly against the grain of the supreme court's *Tafoya* precedents and federal *Apprendi* jurisprudence, which exempt historical facts and prior convictions, respectively—in other words, factors extrinsic to an offense—from the dual requirement of allegation and determination by the trier of fact. *State v. Tafoya*, 91 Hawai'i 261, 271, 982 P.2d 890, 900 (1999); *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). Thus, the State urges, *Domingues* should be overruled. Be that as it may, that we cannot and will not do. We take the supreme court at its word.

7. HRS § 707–712(1)(a) (1993) provides: "A person commits the offense of assault in the third

*tling* court reasoned that, "when the oral charge is viewed as a whole, the oral charge clearly indicates that the reference to 'assault' anchors 'injury' within the context of criminal assault, which necessarily involves bodily injury." *Id.* at 319, 55 P.3d at 283 (citation omitted). The supreme court also pointed to the record, noting that Sprattling suffered no substantial prejudice by the omission of the modifier in the oral charge. *Id.* at 320–21, 55 P.3d at 284–85.

Upon its *Sprattling* citation, the State observes:

> The October 11, 2004 oral charge sufficiently apprised Kekuewa of the elements of the underlying [DUI] charge pursuant to HRS § 291E–61(a). Kekuewa was also apprised, arguably unnecessarily, that this was his second such offense. As such, Kekuewa was sufficiently apprised of what he must be prepared to meet to adequately prepare a defense.

Answering Brief at 23–24 (bold typeface omitted). We observe, however, that Sprattling challenged the oral charge for the first time in his appeal, and thus, the *Motta* liberal construction standard for post-conviction challenges controlled. *Sprattling,* 99 Hawai'i at 318, 55 P.3d at 282. Hence all the talk in *Sprattling* of notice and prejudice. *See Motta,* 66 Haw. at 91, 657 P.2d at 1020. But that standard does not here obtain, *Robins,* 66 Haw. at 314, 660 P.2d at 41, and we reiterate that *Cummings* here controls.

The five-year time period omitted from the oral charge was a critical part of the HRS § 291E–61(b)(2) attendant circumstance, one with especial resonance in this case in light of Defendant's several prior DUI convictions. Its inclusion was required, and "that requirement is not satisfied by the fact that [Defendant] actually knew [the essential elements of the offense charged] and was not misled by the failure to sufficiently allege all of them." *Cummings,* 101 Hawai'i at 143, 63 P.3d at 1113 (block quote format omitted) (quoting *Israel,* 78 Hawai'i at 73, 890 P.2d at 310). "Moreover, citing to a statutory reference does not cure a charge that merely states an element of the offense in generic terms." *Id.*

(citing *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374). We conclude that the oral charge in this case was defective, and that Defendant's oral motion to dismiss should have been granted.

## IV. Conclusion.

Accordingly, the March 22, 2005 judgment of the district court is reversed insofar as it convicted and sentenced Defendant for DUI. The judgment is otherwise affirmed. In light of this disposition, we need not reach Defendant's claim of insufficiency of the DUI evidence.

degree if the person: Intentionally, knowingly, or recklessly causes bodily injury to another person[.]" (Enumeration omitted; format modified.)