163 P.3d 1148

**STATE Of Hawai‘i, Plaintiff–
Appellee–Petitioner,**

v.

**Philip Kala KEKUEWA, Defendant–
Appellant–Respondent.**

**No. 27248.**

Supreme Court of Hawai‘i.

July 31, 2007.

412

Brian R. Vincent, Deputy Prosecuting Attorney, for Plaintiff–Appellee–Petitioner on the application and supplemental brief.

Taryn R. Tomasa, Deputy Public Defender, for Defendant–Appellant–Respondent on the supplemental brief.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ., and ACOBA, J., concurring and dissenting.

Opinion of the Court by NAKAYAMA, J.

Plaintiff–Appellee–Petitioner, State of Hawai'i ("prosecution"), petitions this court to review the Intermediate Court of Appeals' ("ICA") August 23, 2006 judgment reversing the March 22, 2005 judgment of the first circuit district court ("district court") convicting defendant-appellant-respondent, Philip Kala Kekuewa, III ("Kekuewa"), of the offenses of Operating a Vehicle Under the Influence of an Intoxicant ("OVUII"), in violation of Hawai'i Revised Statutes ("HRS") § 291E–61,[1] Driving Without a License ("DWOL"), in violation of HRS § 286–102,[2]

1. HRS § 291E–61 (Supp.2004) provides, in pertinent part, as follows:

§ 291E–61 Operating a vehicle under the influence of an intoxicant. (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
(2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;
(3) With .08 or more grams of alcohol per two hundred ten liters of breath; or
(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.
(b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation or suspension of sentence:
(1) For the first offense, or any offense not preceded within a five-year period by a conviction for an offense under this section or section 291E–4(a):
(A) A fourteen-hour minimum substance abuse rehabilitation program, including education and counseling, or other comparable program deemed appropriate by the court;
(B) Ninety-day prompt suspension of license and privilege to operate a vehicle during the suspension period, or the court may impose, in lieu of the ninety-day prompt suspension of license, a minimum thirty-day prompt suspension of license with absolute prohibition from operating a vehicle and, for the remainder of the ninety-day period, a restriction on the license that allows the person to drive for limited work-related purposes and to participate in substance abuse treatment programs;
(C) Any one or more of the following:
(i) Seventy-two hours of community service work;
(ii) Not less than forty-eight hours and not more than five days of imprisonment; or
(iii) A fine of not less than $150 but not more than $1,000; and
(D) A surcharge of $25 to be deposited into the neurotrauma special fund;

(2) For an offense that occurs within five years of a prior conviction for an offense under this section or section 291E–4(a) by:
(A) Prompt suspension of license and privilege to operate a vehicle for a period of one year with an absolute prohibition from operating a vehicle during the suspension period;
(B) Either one of the following:
(i) Not less than two hundred forty hours of community service work; or
(ii) Not less than five days but not more than fourteen days of imprisonment of which at least forty-eight hours shall be served consecutively;
(C) A fine of not less than $500 but not more than $1,500; and
(D) A surcharge of $25 to be deposited into the neurotrauma special fund....

2. HRS § 286–102 (Supp.2004) provides, in relevant part, as follows:

§ 286–102 Licensing. (a) No person, except one exempted under section 286–105, one who holds an instruction permit under section 286–110, one who holds a commercial driver's license issued under section 286–239, or a commercial driver's license instruction permit issued under section 286–236, shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles.
(b) A person operating the following category or combination of categories of motor vehicles shall be examined as provided in section 286–108 and duly licensed by the examiner of drivers:
(1) Mopeds;
(2) Motorcycles and motor scooters;
(3) Passenger cars of any gross vehicle weight rating, buses designed to transport fifteen or fewer occupants, and trucks and vans having a gross vehicle weight rating of fifteen thousand pounds or less; and
(4) All of the motor vehicles in category (3) and trucks having a gross vehicle weight rating of fifteen thousand one through twenty-six thousand pounds.
A school bus or van operator shall be properly licensed to operate the category of vehicles that the operator operates as a school bus or

and Speeding, in violation of HRS § 291C–102.[3] On appeal, the prosecution argues that: (1) this court should reconsider *State v. Domingues*, 106 Hawai'i 480, 107 P.3d 409 (2005), in which this court stated that prior convictions are essential elements of the offense of OVUII; (2) the ICA erred by reversing Kekuewa's conviction, rather than remanding the matter for resentencing under HRS § 291E–61(b)(1); and (3) a reasonable person would have found the overwhelming evidence sufficient to support the conclusion that Kekuewa operated a vehicle under the influence of an intoxicant.

For the following reasons, we vacate Kekuewa's conviction of and sentence for the offense of OVUII under HRS §§ 291E–61(a) and (b)(2) (Supp.2004), and remand the matter for entry of judgment of conviction of and resentencing for the offense of OVUII pursuant to HRS §§ 291E–61(a) and (b)(1) (Supp. 2004). We also vacate the ICA's August 23, 2006 judgment to the extent that it reverses Kekuewa's conviction of and sentence for the offense of OVUII under HRS §§ 291E–61(a) and (b)(2) (Supp.2004).

## I. BACKGROUND

On April 15, 2004, at approximately 1:45 a.m., Officer Ryan Nishibun ("Officer Nishibun") observed a black truck entering the H–1 Freeway, westbound, around the Kahala Mall area. Officer Nishibun testified that his attention was drawn to the vehicle because it was traveling at "a high rate of speed." Officer Nishibun proceeded to follow the truck and warned officers stationed along the freeway of its approach. An officer positioned on the Waialae Avenue overpass, using a laser device, measured the truck's rate of speed at 88 miles per hour.

Officer Nishibun caught up to the truck around the 6th Avenue overpass, and he observed it weaving within the left lane of the freeway. Officer Nishibun subsequently activated his blue lights and siren, but the driver did not respond. Officer Jacob Miyashiro ("Officer Miyashiro"), an officer also in pursuit, positioned his vehicle in front of the truck and decelerated to force it to slow down. When the truck eventually stopped, Officer Nishibun and other responding officers surrounded the vehicle.

Approaching the vehicle from the rear, Officer Nishibun observed two adult male occupants. Kekuewa was seated on the driver's side of the truck, and Stewart Conrad ("Conrad") was seated on the passenger's side. When Officer Nishibun asked Kekuewa to step out of his vehicle, Kekuewa appeared to fumble with the locking mechanism. When asked for his paperwork, Kekuewa was unable to produce a driver's license and later admitted that he did not have one. Officer Nishibun described Kekuewa's physical appearance as follows: "[Kekuewa's] face appeared flushed. He had bloodshot, glassy eyes. And initially when he opened the door, I could smell a strong odor of alcoholic-type beverage coming from within the cab, and then later while speaking with him, I could detect that odor coming from his breath." Officer Miyashiro also testified that Kekuewa emanated a strong odor of alcohol, and that "[h]is eyes were red, watery, glassy. When he spoke to me, his speech was slurred, very slurred." Officer Miyashiro further observed that, "from the moment [Kekuewa] got out of the vehicle, he appeared very unsteady on his

van and shall comply with the standards of the department of transportation as provided by rules adopted pursuant to section 286–181.

**3.** HRS § 291C–102 (Supp.2004) provides as follows:

§ **291C–102 Noncompliance with speed limit prohibited.** (a) No person shall drive a vehicle at a speed greater than a maximum speed limit and no person shall drive a motor vehicle at a speed less than a minimum speed limit established by county ordinance.

(b) The director of transportation with respect to highways under the director's jurisdic-

tion may place signs establishing maximum speed limits or minimum speed limits. Such signs shall be official signs and no person shall drive a vehicle at a speed greater than a maximum speed limit and no person shall drive a motor vehicle at a speed less than a minimum speed stated on such signs.

(c) If the maximum speed limit is exceeded by more than ten miles per hour, a surcharge of $10 shall be imposed, in addition to any other penalties, and shall be deposited into the nuerotrauma special fund.

feet and for the duration of my observation, while he was supposed to be standing, he appeared very unsteady on his feet."

Due to the location of the stop, Officer Nishibun subsequently ordered the transport of Kekuewa and Conrad to a safe location to conduct a field sobriety test. Kekuewa was taken to the law library parking lot on the University of Hawai'i campus. Thereafter, Officer Dexter Gapusan ("Officer Gapusan") administered a standardized field sobriety test. Based upon Kekuewa's performance on the field sobriety test, Officer Gapusan believed that Kekuewa was impaired and arrested him for OVUII.[4]

Kekuewa was arraigned on October 11, 2004 and charged as follows:

> [Prosecution]: Mr. Kekuewa, on or about the 15th day of April 2004, in the City and County of Honolulu, State of Hawaii, island of Oahu, you did operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair your normal mental faculties or the ability to care for yourself and guard against casualty thereby violating Section 291E–61 of the Hawaii Revised Statutes *for your second offense.*
>
> On that same date, 15th day of April, 2004, you did, in the City and County of Honolulu, State of Hawaii, operate or permit the operation of or cause the operation or (indiscernible) the vehicle on a public highway without a current official certificate of inspection in violation of Section 286–25, Hawaii Revised Statutes.
>
> And on or about that same day, the 15th of April 2004, you did, in the City and County of Honolulu, State of Hawaii, you did operate a motor vehicle without first being appropriately examined and duly licensed as a qualified driver of that vehicle in violation of Section 286–102 of the Hawaii Revised Statutes. That's your third offense for driving without a license.

> And sir, on that same day in the City and County of Honolulu, State of Hawaii, you did drive a vehicle at a speed greater than the maximum speed limit stated on signs placed by the director of transportation with respect to highways under the director's jurisdiction by traveling at a speed of 88 miles per hour in a 50–mile–per–hour zone thereby violating Section 291C–102(B) of the Hawaii Revised Statutes.

(Emphasis added.) Kekuewa pled not guilty.

At trial, Kekuewa claimed that he was not the driver of the truck and that he had switched seats with Conrad. Kekuewa explained that he had been sleeping in the passenger's seat when Conrad woke him up. Kekuewa testified that Conrad told him, "brah, I got a warrant, brah, just hop over...." Kekuewa admitted consuming alcohol earlier in the day, but claimed that he stopped drinking at approximately 4:00 p.m. He further explained that he had been surfing and barbecuing at Sandy Beach all day, and that those activities, in addition to fatigue, caused the appearance of intoxication observed by the police officers during the incident in question.

Based upon the evidence, the district court found Kekuewa guilty of the offenses of OVUII, DWOL, and Speeding.[5] With respect to the offense of OVUII, the court sentenced Kekuewa to a ten-day term of incarceration, ordered him to pay a $1,000 fine, suspended his license for one year, and ordered him to obtain substance abuse treatment. With respect to the offense of DWOL, the court sentenced Kekuewa to six months of probation. With respect to the offense of Speeding, the court ordered Kekuewa to pay a $200 fine. The court filed a "Notice of Entry of Judgment and/or Order and Plea/Judgment" on March 22, 2005.

Kekuewa filed a timely notice of appeal on April 20, 2005.

---

4. The court considered Officer Gapusan's testimony as a lay opinion, rather than an expert opinion. There is no evidence in the record as to whether Kekuewa passed or failed the field sobriety test.

5. The district court had earlier dismissed the charge alleging a safety certification violation inasmuch as the prosecution failed to make a prima facie case that Kekuewa operated a vehicle on a public highway without a current official certificate of inspection.

On appeal, Kekuewa argued that: (1) he did not have adequate notice of the offense of OVUII because the prosecution failed to properly allege the attendant circumstances of Kekuewa's prior conviction; and (2) the record lacks sufficient evidence to support his conviction for committing the offense of OVUII. The prosecution answered that: (1) Kekuewa had sufficient notice that he was charged with OVUII, insofar as (a) prior convictions are extrinsic and need not be alleged in the prosecution's charge, and (b) Kekuewa was sufficiently apprised of the elements of the offense of OVUII, the absence of the language "within five years" notwithstanding; and (2) sufficient evidence was adduced at trial to support Kekuewa's conviction of the offense of OVUII.

On August 10, 2006, the ICA filed a published opinion reversing Kekuewa's OVUII conviction. The ICA first rejected the prosecution's "primary argument" that this court's decision in *Domingues,* designating prior OVUII convictions as prima facie elements, contradicts prior state and federal precedent and should be overruled. *State v. Kekuewa,* 112 Hawai'i 269, 276 n. 6, 145 P.3d 812, 819 n. 6 (App.2006). The ICA thereafter concluded that "[t]he five-year time period omitted from the oral charge was a critical part of the HRS § 291E–61(b)(2) attendant circumstance, one with especial resonance in this case in light of Defendant's several prior DUI convictions." *Id.* at 277, 145 P.3d at 820. Accordingly, the ICA held that the absence of the five-year time period rendered the prosecution's oral charge defective. *Id.* In light of the dispositive nature of the foregoing conclusion, the ICA did not reach Kekuewa's claim that the evidence was insufficient to support his OVUII conviction. *Id.*

The ICA filed a judgment on appeal on August 23, 2006, and the prosecution filed a timely application for writ of certiorari on November 6, 2006.

On December 5, 2006, this court accepted certiorari and filed an order requesting supplemental briefing as to whether this court's interpretation of HRS § 291E–61(b) (Supp. 2002) in *Domingues* is applicable to the underlying prosecution commenced on October 11, 2004, given the subsequent amendments

made to HRS § 291E–61(b) by 2003 Haw. Sess. L. Act 71, § 1, at 123–24 ("Act 71"), effective January 1, 2004. Oral argument was held on March 21, 2007.

## II. STANDARDS OF REVIEW

### A. Certiorari

The appropriate standard of review for determining whether to accept or reject an application for writ of certiorari is set forth in 2006 Haw. Sess. L. Act 149, § 1, as follows:

> (a) After issuance of the intermediate appellate court's judgment or dismissal order, a party may seek review of the intermediate appellate court's decision and judgment or dismissal order only by application to the supreme court for a writ of certiorari, the acceptance or rejection of which shall be discretionary upon the supreme court.
>
> ・ (b) The application for writ of certiorari shall tersely state its grounds, which shall include:
>
> (1) Grave errors of law or of fact; or
>
> (2) Obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision,
>
> and the magnitude of those errors or inconsistencies dictating the need for further appeal.

### B. Sufficiency of the Complaint

■ " 'Whether [a complaint] sets forth all the essential elements of [a charged] offense . . . is a question of law,' which we review under the *de novo,* or 'right/wrong' standard." *State v. Cummings,* 101 Hawai'i 139, 142, 63 P.3d 1109, 1112 (2003) (citing *State v. Merino,* 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996) (quoting *State v. Wells,* 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995))).

### C. Sufficiency of the Evidence

■ When reviewing the sufficiency of the evidence, this court has previously set forth the following standard of review:

> We have long held that evidence adduced in the trial court must be considered

in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficiency quality and probative value to enable a person of reasonable caution to support a conclusion.

*State v. Viglielmo,* 105 Hawai'i 197, 202–03, 95 P.3d 952, 957–58 (2004) (block quote formatting removed) (internal citations omitted) (some internal quotation marks omitted) (brackets omitted).

### III. DISCUSSION

#### A. *State v. Domingues*

The central issue on appeal is whether the ICA properly ruled that the prosecution's oral charge was insufficient based on its conclusion that the prosecution was required to inform Kekuewa that the charged offense occurred within five years of a prior OVUII conviction, rather than merely informing him that he was being charged with "violating Section 291E–61 of the Hawaii Revised Statutes *for [his] second offense.*" (Emphasis added.)

The prosecution acknowledges that *Domingues* indicates that the contents of HRS § 291E–61(b)(1)–(4) (Supp.2002) constitute attendant circumstances that must be incorporated into the prosecution's charge. However, the prosecution contends that *Domingues* was erroneously decided inasmuch as: (1) the plain language and legislative history of HRS §§ 291E–61(b)(1)–(3) (Supp.2002) do not indicate an intent to make prior convictions an element of the offense of OVUII; (2) *Domingues'* conclusion that HRS § 291E–61(b)(1)–(3) (Supp.2002) are intrinsic and must be included in the prosecution's charge is a misapplication of the intrinsic/extrinsic analysis and contrary to established state and federal case law; and (3) prior convictions have traditionally been considered as sentencing factors, and the introduction of prior conviction evidence during the guilt phase of a trial is prejudicial to a defendant.

In *Domingues,* on March 21, 2002, Kyle Evan Domingues ("Domingues") was charged with the following offenses: "(1) habitually driving under the influence of intoxicating liquor (Count I), in violation of HRS § 291–4.4 ...; (2) driving without lights (Count II), in violation of HRS § 291–25(a) (1993); and (3) driving while license suspended or revoked (Count III), in violation of HRS § 286–132 (Supp.2001)." *Domingues,* 106 Hawai'i at 482–83, 107 P.3d at 411–12 (footnote omitted). Count I of the indictment alleged that:

On or about the 9th day of August 2001, in the City and County of Honolulu, State of Hawai'i, KYLE EVAN DOMINGUES did operate or assume actual physical control of the operation of any vehicle *while under the influence of intoxicating liquor,* meaning that he was under the influence of intoxicating liquor in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, *and had been convicted three or more times for driving under the influence offenses during a ten-year period, and/or* did operate or assume actual physical control of the operation of any vehicle while with .08 or more grams of alcohol per one hundred milliliters, or cubic centimeters of blood *or .08 or more grams of alcohol per two hundred ten liters of breath,* and had *been convicted three or more times for driving under the influence offenses during a ten year period,* thereby committing the *offense of Habitually Driving Under the Influence of Intoxicating Liquor or Drugs, in violation of Sections 291–4.4(a)(1) and/or 291–4.4(a)(2) of the Hawai'i Revised Statutes* [sic].

*Id.* at 483, 107 P.3d at 412 (emphases in original)

HRS § 291–4.4(a) (Supp.2000) reads, in pertinent part, as follows:

§ **291–4.4 Habitually driving under the influence of intoxicating liquor or drugs.** (a) A person commits the offense of habitually driving under the influence of

intoxicating liquor or drugs if, during a ten-year period the person has been convicted three or more times for a driving under the influence offense; and

   (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty;

   (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath....

Problematic, however, was the fact that HRS §§ 291–4.4(a)(1) and (a)(2) were in effect at the time of Domingues' conduct, but not at the time of his indictment. *Domingues,* 106 Hawai'i at 484, 107 P.3d at 413. Effective January 1, 2002, the legislature had repealed HRS § 291–4.4 and enacted HRS § 291E–61. *Id.* (citing 2000 Haw. Sess. L. Act 189 ("Act 189"), §§ 21–22 at 404). Accordingly, Domingues filed a motion to dismiss the indictment. *Id.* at 483, 107 P.3d at 412. The circuit court granted the motion and dismissed the indictment without prejudice. *Id.* The court subsequently denied the prosecution's motion for reconsideration, and the prosecution filed a timely notice of appeal. *Id.*

On appeal, this court agreed with the prosecution's argument that prosecuting Domingues "under the repealed statute was permissible[,] as the new statute no[t] only encompasse[d] the same conduct as the repealed statute[,] but also impose[d] the same punishment upon conviction." *Id.* at 484, 107 P.3d at 413 (some alterations in original and some added). This court concluded that HRS §§ 291E–61(a) and (b)(4) (Supp.2002) substantially reenacted the provisions set forth in HRS §§ 291–4.4(a)(1) and (a)(2), despite the fact that HRS § 291–4.4 made proof of three or more convictions within a ten-year period a prima facie element of the

offense of habitually driving under the influence of intoxicating liquor or drugs and HRS § 291E–61(b)(4) (Supp.2002) appeared to reserve consideration of prior convictions for sentencing. *See id.* at 486, 107 P.3d at 415 ("By their plain language, the relevant provisions of HRS § 291E–61 're-enact' the definition of the offense contained in HRS § 291–4.4 'without substantial changes.'") (Footnote omitted.).

In achieving that result, this court acknowledged that HRS § 291E–61(b) (Supp. 2002) was prefaced with language indicating that it pertained to sentencing. *Id.* at 487, 107 P.3d at 416. However, this court perceived a potential due process problem with construing HRS §§ 291E–61(b)(1)–(4) (Supp. 2002) as sentencing factors, insofar as the prosecution would not be required to allege them in its charge. *Id.* at 487 n. 8, 107 P.3d at 416 n. 8. Excluding such information from the charge would result in a defendant's inability to ascertain whether he or she was charged with a petty misdemeanor or a class C felony, thereby preventing him or her from knowing whether he or she was entitled to a trial by jury. *Id.*

This court thus concluded that

the degree of punishment for a violation of HRS § 291E–61(a) escalates as a function of whether the violation constitutes: (1) a "first offense, or any offense not preceded within a five-year period by a [prior and like] conviction," HRS § 291E–61(b)(1); (2) "an offense that occurs within five years of a prior [and like] conviction," HRS § 291E–61(b)(2); (3) "an offense that occurs within five years of two prior [and like] convictions," HRS § 291E–61(b)(3); or, as in the present case, "an offense that occurs within ten years of three or more prior [and like] convictions," HRS § 291E–61(b)(4). .... *In other words, the foregoing prefatory language of HRS § 291E–61(b)(1) through 291E–61(b)(4) describes attendant circumstances ... that are intrinsic to and "enmeshed" in the hierarchy of offenses that HRS § 291E–61 as a whole describes.*

*Id.* at 487, 107 P.3d at 416 (emphasis added). This court continued:

[I]f the "aggravating circumstances" justifying the imposition of an enhanced sentence are "enmeshed in," or, put differently, *intrinsic* to the "commission of the crime charged," then, in accordance with the [*State v.*] *Estrada*[, 69 Haw. 204, 738 P.2d 812 (1987) ] rule, such aggravating circumstances *"must* be alleged in the [charging instrument] in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact."

*State v. Schroeder*, 76 Hawai'i 517, 528, 880 P.2d 192, 203 (1994). . . .

. . . .

. . . *[I]t is an impermissible dilution of the jury's role as factfinder to remove the responsibility for determining the existence of facts leading to the imposition of a particular punishment.* . . . We hold that when a fact susceptible to jury determination is a predicate to the imposition of an enhanced sentence, the Hawai'i Constitution requires that such factual determinations be made by the trier of fact. *The legislature may not dilute the historical province of the jury by relegating facts necessary to the imposition of a certain penalty for criminal behavior to the sentencing court. The jury is the body responsible for determination of intrinsic facts necessary for the imposition of punishment for an offense criminalized by the legislature.* The analysis in *Schroeder* protects the jury's role by mandating that the determination of facts intrinsic to the offense be made by the trier of fact.

*Id.* at 487–88, 107 P.3d at 416–17 (some brackets added and some in original) (emphases in original) (ellipses in original) (citing *State v. Tafoya*, 91 Hawai'i 261, 270, 273, 982 P.2d 890, 899, 902 (1999)).

Based upon the foregoing analysis, we vacated the circuit court's order dismissing the indictment and remanded the matter for further proceedings. *Id.* at 488, 107 P.3d at 417.

Here the prosecution asks this court to overrule *Domingues* to the extent that it characterizes the provisions set forth in HRS

§§ 291E–61(b)(1)–(4) (Supp.2002) as attendant circumstances. We do not lightly overrule precedent. In *State v. Garcia*, 96 Hawai'i 200, 29 P.3d 919 (2001), this court stated as follows:

Precedent is "[a]n adjudged case or decision of a court, considered as furnishing an example of authority for an identical or similar case afterwards arising or a similar question of law." *Black's Law Dictionary* 1176 (6th ed.1990). The "[p]olicy of courts to stand by precedent and not to disturb settled point[s]" is referred to as the doctrine of *stare decisis, id.* at 1406, and operates "as a principle of self-restraint . . . with respect to the overruling of prior decisions." *Robinson v. Ariyoshi*, 65 Haw. 641, 653 n. 10, 658 P.2d 287, 297 n. 10 (1982), *reconsideration denied*, 66 Haw. 528, 726 P.2d 1133 (1983). The benefit of stare decisis is that it "furnish[es] a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; . . . eliminat[es] the need to relitigate every relevant proposition in every case; and . . . maintain[s] public faith in the judiciary as a source of impersonal and reasoned judgments." *Id.* (citing *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)).

While "there is no necessity or sound legal reason to perpetuate an error under the doctrine of stare decisis[,]" *id.* (internal quotation marks and citation omitted), we agree with the proposition expressed by the United States Supreme Court that a court should "not depart from the doctrine of stare decisis without *some compelling justification." Hilton v. South Carolina Pub. Ry. Comm'n*, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (emphasis added). *Cf. Dairy Road Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 421, 992 P.2d 93, 116 (2000) (stating that "a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it") (internal quotation marks and citations omitted). Thus, "when th[e c]ourt reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic

considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case." *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). *In this calculus, "[c]onsiderations of stare decisis have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and [the legislative branch] remains free to alter what we have done." Hilton,* 502 U.S. at 202, 112 S.Ct. 560 (internal quotation marks and citation omitted).

*Id.* at 205–06, 29 P.3d at 924–25 (brackets in original) (ellipses in original) (some emphases in original and some added).

As previously mentioned, the prosecution contends that *Domingues* was erroneously decided inasmuch as: (1) the plain language and legislative history of HRS §§ 291E–61(b)(1)–(3) (Supp.2002) do not indicate an intent to make prior convictions an element of the offense of OVUII; (2) *Domingues'* conclusion that HRS § 291E–61(b)(1)–(3) (Supp.2002) are intrinsic and must be included in the prosecution's charge is a misapplication of the intrinsic/extrinsic analysis and contrary to established state and federal case law; and (3) prior convictions have traditionally been considered as sentencing factors, and the introduction of prior conviction evidence during the guilt phase of a trial is prejudicial to a defendant.

1. *The plain language and legislative history of HRS §§ 291E–61(b)(1)–(b)(3).*

█ Admittedly, a fair reading of HRS § 291E–61(b) (Supp.2002) provides the initial impression that its contents describe sentencing factors, rather than attendant circumstances, given the fact that HRS § 291E–61(b) (Supp.2002) is prefaced with language stating that "a person committing the offense of operating a vehicle under the influence of an intoxicant *shall be sentenced as follows*[.]" (Emphasis added.) *Domingues* conceded that fact, but further recognized

that construing HRS §§ 291E–61(b)(1)–(4) (Supp.2002) as extrinsic sentencing factors would have raised serious concerns regarding the statute's constitutionality, given a defendant's inability to ascertain the class and grade of the offense charged (*i.e.,* a petty misdemeanor or a class C felony) and whether the right to a jury has or has not attached. Thus, *Domingues* concluded that HRS § 291E–61(b) (Supp.2002) delineated attendant circumstances differentiating a hierarchy of offenses. That conclusion is sustainable on the grounds that this court impliedly conformed to the principle of statutory interpretation that a statute shall be construed in a manner that does not offend the state and federal constitutions. *See In re Jane Doe,* 96 Hawai'i 73, 81, 26 P.3d 562, 570 (2001) ("The doctrine of 'constitutional doubt,' a well-settled canon of statutory construction, counsels that 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is [to] adopt the latter.") (Citations omitted.).

The same rationale was utilized by the United States Supreme Court in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In *Jones,* the United States Supreme Court interpreted a federal carjacking statute, which then read as follows:

"Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

"(1) be fined under this title or imprisoned not more than 15 years, or both,

"(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

"(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both."

*Jones,* 526 U.S. at 230, 119 S.Ct. 1215 (citing 18 U.S.C. § 2119 (1988)). At the outset, the Court noted that the dispositive issue was

whether the foregoing carjacking statute "defined three distinct offenses or a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict." *Id.* at 229, 119 S.Ct. 1215. When resolving that issue, the Court concluded that construing the statute as describing a single offense would "raise serious constitutional questions on which precedent is not dispositive[,]" *id.* at 251, 119 S.Ct. 1215, and that, based on the doctrine of "constitutional doubt," the statute must be construed as "establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Id.* at 252, 119 S.Ct. 1215.

Similarly, *Domingues* involved a statute that arguably presented itself as susceptible to two interpretations, one of which produced a single offense with a choice of four maximum penalties, and the other of which produced four separate offenses by the specification of distinct elements. To reiterate, the constitutional doubt in *Domingues*, precluding the former interpretation, was that a defendant charged under HRS § 291E–61 (Supp.2002) would not have had sufficient notice of (1) whether he or she was charged with a petty misdemeanor or a class C felony, and (2) whether he or she was entitled to a jury. Thus, we avoided the constitutionally questionable interpretation, as did the Court in *Jones.*

Finally, the prosecution's argument that legislative history does not indicate an intent to construe HRS § 291E–61(b) (Supp.2002) as attendant circumstances does not undermine the foregoing conclusion insofar as the absence of legislative guidance one way or the other should not compel us to reverse our recent position and reinterpret HRS § 291E–61(b) (Supp.2002) in a manner that would cast doubt on its constitutionality.

*2. The intrinsic/extrinsic analysis and the traditional view that prior convictions are sentencing factors*

■ Furthermore, addressing the prosecution's final two sub-arguments, we believe that *Domingues* is not inconsistent with the intrinsic/extrinsic analysis developed by this court's prior decisions in *State v. Estrada,* 69 Haw. 204, 738 P.2d 812 (1987), *State v. Schroeder,* 76 Hawai'i 517, 880 P.2d 192 (1994), and *State v. Tafoya,* 91 Hawai'i 261, 982 P.2d 890 (1999).

In *Estrada,* we reviewed a defendant's appeal from the second circuit court's judgment convicting him of the offense of attempted murder and sentencing him to life imprisonment without the possibility of parole for the shooting of an on-duty Maui County police officer. *Estrada,* 69 Haw. at 206, 738 P.2d at 816. The defendant-appellant argued that he did not have fair notice of the enhanced sentence, in contravention of his due process rights, because the prosecution did not allege the enhanced sentencing statute—HRS § 706–606.1(1)(a) (1985) [6]—in the complaint and the jury did not make the factual determination that the police officer was on-duty when shot. *Id.* at 213, 738 P.2d at 819–20. We agreed, stating that appellant had a due process right to have " 'fair notice of the charges against' him," *id.* at 230, 738 P.2d at 829 (citing *State v. Apao,* 59 Haw. 625, 635–36, 586 P.2d 250, 258 (1978), *subsequent resolution,* 66 Haw. 682, 693 P.2d 405 (1984), *superseded by statute as stated in Briones v. State,* 74 Haw. 442, 456 n. 7, 848 P.2d 966, 974 n. 7 (1993)), and that "the aggravating circumstances must be *alleged in the indictment and found by the jury.*" *Id.* (emphasis in original). Thus, we held that the jury, and not the sentencing judge, was required to make the factual finding that the police officer was on-duty when shot. *Id.*

In *Schroeder,* we further distilled the doctrine. Therein, we explained that *Estrada*

---

**6.** HRS § 706–606.1(1)(a) (1985) provides as follows:

**[§ 706–606.1] Sentence for offense of attempted murder.** The court shall sentence a person who has been convicted of attempted murder to an indeterminate term of imprisonment as follows:

(1) Life imprisonment without possibility of parole in the attempted murder of:
 (a) A peace officer while in the performance of his duties[.]

embodied the notion that intrinsic facts justifying the imposition of an enhanced sentence must be alleged in the charging instrument. *Schroeder*, 76 Hawai'i at 528, 880 P.2d at 203. Extrinsic or "historical" facts, on the other hand, need not be alleged in the charging instrument, and are properly determined by the sentencing court after the adjudication of guilt by the trier of fact. *Id.* We ultimately concluded that the use of handgun—a fact justifying the imposition of an enhanced sentence pursuant to HRS 706–660.1(a) (1985)[7] —was a fact intrinsic to the charged crime of kidnapping, and that the prosecution sufficiently alleged that fact in the complaint. *Id.* at 528, 530, 880 P.2d at 203, 205.

Subsequently, in *Tafoya*, this court reviewed a defendant's conviction of the offense of second degree assault and extended term of imprisonment. The defendant was charged with, and convicted of, committing the offense of assault in the second degree. *Tafoya*, 91 Hawai'i at 266, 982 P.2d at 895. Following the defendant's conviction, the prosecution filed a motion for an extended term of imprisonment pursuant to HRS § 706–662(5) (Supp.1998). *Id.* The sentencing court granted the prosecution's motion and sentenced the defendant to an extended indeterminate ten-year term of incarceration. *Id.* at 266–67, 982 P.2d at 895–96. On appeal, the defendant claimed that there was insufficient evidence presented before the sentencing court that "(1) [the victim] was sixty years of age or older at the time of the assault and (2) that [the defendant] knew or reasonably should have known this fact." *Id.* at 269, 982 P.2d at 898.

This court first addressed the issue whether such "findings, which are essential to the imposition of an enhanced term of imprisonment, may legitimately be made by the sentencing court [ (*i.e.*, extrinsic facts) ], or whether they are required to be submitted to and found by the trier of fact [ (*i.e.*, intrinsic facts) ]." *Id.* at 270, 982 P.2d at 899. This court subsequently extrapolated upon the difference between intrinsic and extrinsic facts:

> In reviewing our previous case law, it is apparent that "intrinsic" factors, required to be pled in the indictment and found by the jury, are distinguishable in that they are contemporaneous with, and enmeshed in, the statutory elements of the proscribed offense. Contrarily, "extrinsic" factors are separable from the offense itself in that they involve consideration of collateral events or information. Occurrence at a prior time is indicative, although not dispositive, of a conclusion that a factor is "extrinsic." For example, HRS § 706–662(a) (Supp.1997) provides that a defendant may be sentenced to an extended term of imprisonment upon a finding that "[t]he defendant is a professional criminal[.] The court shall not make this finding unless ... the *circumstances of the crime* show that the defendant has knowingly engaged in criminal activity as a major source of livelihood[.]" (Emphasis added). Although this section refers to the "circumstances of the crime," and therefore implies consideration of information contemporaneous with the commission of the offense, this finding is nevertheless "extrinsic." A finding under this section is separable from the statutory elements of the offense in a manner qualitatively different from, for example, the "intrinsic" finding that the offender utilized a semiautomatic weapon in the course of committing the offense charged. Requiring the jury to make such a finding would require the admission of potentially irrelevant and

---

7. HRS § 706–660.1(a) (1985) provides as follows:

> [§ 706–660.1] **Sentence of imprisonment for use of a firearm in a felony.** (a) A person convicted of a felony, where the person had a firearm in his possession and threatened its use or used the firearm while engaged in the commission of the felony, may be sentenced to a mandatory term of imprisonment the length of which shall be as follows:
> (1) For a class A felony—up to 10 years; and
> (2) For a class B felony—up to 5 years.

> The sentence of imprisonment for a felony involving the use of a firearm as provided in this subsection shall not be subject to the procedure for determining minimum term of imprisonment prescribed under section 706–669, provided further that a person who is imprisoned in a correctional institution as provided in this subsection shall become subject to the parole procedure as prescribed in section 706–670 only upon the expiration of the term of mandatory imprisonment fixed under (a)(1) or (2), herein.

prejudicial evidence and contaminate the jury's required focus on the specific elements of the offense charged[.]

*Id.* at 271, 982 P.2d at 900 (some brackets in original and some added) (ellipses in original) (emphasis in original) (footnote omitted).

Citing the "necessity of upholding a defendant's constitutional rights to trial by jury and procedural due process[,]" *id.* at 272, 982 P.2d at 901 (footnote omitted), this court held, *inter alia*, that (1) for purposes of enhanced sentences, "findings regarding (a) the age or handicapped status of the victim and (b) whether '[s]uch disability is known or reasonably should be known to the defendant' entail 'intrinsic' facts[ ]" that are "inextricably enmeshed in the defendant's actions in committing the offense charged[,]" *Tafoya,* 91 Hawai'i at 271, 982 P.2d at 900, and (2) "when a fact susceptible to jury determination is a predicate to the imposition of an enhanced sentence, the Hawai'i Constitution requires that such factual determinations be made by the trier of fact." *Id.* at 273, 982 P.2d at 902. Insofar as the foregoing factual determinations were made by the sentencing court and not the jury, this court reversed the imposition of an extended term of imprisonment under HRS § 706-662 and remanded the matter for resentencing without enhancement. *Id.* at 275, 982 P.2d at 904.

A fair reading of the foregoing cases arguably supports the prosecution's argument that recidivism (*i.e.*, prior convictions) is generally a fact or circumstance extrinsic to the charged offense. However, *Domingues* presented the rare occasion in which recidivism was a prima facie element of the crime charged. As mentioned, this court interpreted the provisions of HRS § 291E–61(b) (Supp.2002) as describing attendant circumstances, and it would be disingenuous to suggest that such prima facie elements are not intrinsic to or enmeshed in the offense. Thus, while we acknowledge the general view that recidivism is extrinsic, the unique circumstances presented in *Domingues* countenanced the conclusion that prior convictions were intrinsic to, or enmeshed in, the habitual OVUII offenses described by HRS § 291E–61(b)(2)–(4) (Supp.2002) by virtue of their status as prima facie elements.

Accordingly, we perceive no compelling justification to overrule this court's prior decision in *Domingues,* and the prosecution's argument is without merit. Inasmuch as the prosecution provides no further argument, it has failed to demonstrate grave error on the part of the ICA.

**B. The ICA Should Have Remanded the Matter for Entry of Judgment of Conviction of the Offense Described by HRS §§ 291E–61(a) and (b)(1) (Supp. 2004) and Resentencing in Accordance Therewith.**

█ The prosecution next argues that, even if this court declines to overrule *Domingues,* the ICA erred by reversing Kekuewa's conviction as opposed to remanding for resentencing under HRS § 291E–61(b)(1) (Supp.2004). For the following reasons, we agree.

█ It is a well-settled principle that a criminal defendant's conviction will be reversed where the complaint, indictment, oral charge, or information is defective in such a way that it fails to state an offense:

It is well settled that an "accusation must sufficiently allege all of the essential elements of the offense charged," a requirement that "obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint[.]" *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)[; *accord State v. Israel,* 78 Hawai'i 66, 69–70, 890 P.2d 303, 306–07 (1995); *State v. Elliott,* 77 Hawai'i 309, 311, 884 P.2d 372, 374 (1994)]. Put differently, the sufficiency of the charging instrument is measured, *inter alia*, by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]" *State v. Wells,* 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995) (citations and internal quotation marks omitted) (brackets in original). "A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would con-

stitute a denial of due process." *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244 (citations omitted).

[*State v.*] *Merino,* 81 Hawai'i [198,] 212, 915 P.2d [672,] 686 [ (1996) ] (some brackets added and some in original). In other words, an oral charge, complaint, or indictment that does not state an offense contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity. *See Israel,* 78 Hawai'i at 73, 890 P.2d at 310 (quoting *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374 (quoting *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244)); *Elliott,* 77 Hawai'i at 312, 884 P.2d at 375 ("the omission of an essential element of the crime charged is a defect in substance rather than form") (quoting *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244); *Territory v. Koa Gora,* 37 Haw. 1, 6 (1944) (failure to state an offense is a "jurisdictional point"); *Territory v. Goto,* 27 Haw. 65, 102 (1923) (Peters, C.J., concurring) ("[f]ailure of an indictment[,] [complaint, or oral charge] to state facts sufficient to constitute an offense against the law is jurisdictional[;] ... an indictment[,] [complaint, or oral charge] ... is essential to the court's jurisdiction," (brackets added)); HRS § 806–34 (1993) (explaining that an indictment may state an offense "with so much detail of time, place, and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed, as are necessary[,]" *inter alia,* "to show that the court has jurisdiction, and to give the accused reasonable notice of the facts"). That being the case, reversal of a conviction obtained on such a defective accusation does not require a showing of prejudice. *See Elliott,* 77 Hawai'i at 311, 884 P.2d at 374 (agreeing with the ICA that inasmuch as defendant could not demonstrate and did not assert prejudice where an element was omitted from an oral charge, "[t]he question, then, is whether the oral charges can

be reasonably construed to charge [the defendant] with the offenses [of which the defendant was convicted]" (some brackets added and some in original) (citation and quotation signals omitted)); *State v. Yonaha,* 68 Haw. 586, 586–87, 723 P.2d 185, 185–86 (1986) (conviction obtained on oral charge reversed for failure to state "element" of intent; prejudice not addressed); *State v. Faulkner,* 61 Haw. 177, 177–78, 599 P.2d 285, 285–86 (1979) (same); *State v. Borochov,* 86 Hawai'i 183, 193, 948 P.2d 604, 614 (App.1997) (reversing conviction because charge could not be reasonably construed to state an offense). *Cf. State v. Sprattling,* 99 Hawai'i 312, 320, 55 P.3d 276, 284 (2002) (noting that if an indictment merely omits a word rather than "an essential element of the offense, the harmless error doctrine is applicable" and a defendant who challenges the omission for the first time on appeal must demonstrate substantial prejudice). This is because a defect in a complaint is not one of mere form, which is waivable, nor simply one of notice, which may be deemed harmless if a defendant was actually aware of the nature of the accusation against him or her, but, rather, is one of substantive subject matter jurisdiction, "which may not be waived or dispensed with," *see Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244, and that is *per se* prejudicial, *see* [*State v.*] *Motta,* 66 Haw. [89,] 91, 657 P.2d [1019,] 1020 [ (1983) ] (quoting *United States v. Thompson,* 356 F.2d 216, 226 (2d Cir.1965)).

*Cummings,* 101 Hawai'i at 142–43, 63 P.3d at 1112–13 (some brackets in original and some added) (ellipses in original) (emphasis in original).

Our case law further supports the proposition that an appellate court may nevertheless remand for entry of judgment of conviction and resentencing as to any offenses adequately set forth in the accusation (*i.e.,* the complaint, indictment, oral charge, or information).

In *State v. Elliott,* 77 Hawai'i 309, 884 P.2d 372 (1994), Hawai'i County Police Officers Paula Watai ("Officer Watai") and Belinda Kahiwa ("Officer Kahiwa") attempted to arrest Marian Lois Elliott ("Elliott") based upon an incident that occurred on June 28,

1991 at a Kailua–Kona apartment building. *Elliott*, 77 Hawai'i at 310, 884 P.2d at 373. During the arrest, Elliott "unsuccessfully tried to bite Officer Watai and subsequently bit Officer Kahiwa." *Id.* As a result, Elliott was charged with committing the offenses of Resisting Arrest, Assault Against a Police Officer, and Disorderly Conduct. *Id.* The oral charge read, in pertinent part, as follows:

> On or about the 28th day of June, 1991 in Kona, County and State of [Hawai'i], Marian Lois Elliott *attempted to prevent* a Peace Officer acting under color of his official authority from effecting an arrest by using or threatening to use physical force against the peace officer or another thereby committing the offense of resisting arrest in violation of Section 710–1026(1)(a) [Hawai'i] Revised Statutes as [a]mended.
>
> On or about the 28th day of June, 1991 in Kona, County and State of [Hawai'i] Marian Lois Elliott intentionally, knowingly [or] recklessly caused bodily injury *to Officer Belinda Kahiwa* by biting her thereby committing the offense of assault in the third degree, assault of police office [sic] violation of Section 707–712.5 [Hawai'i] Revised Statutes as [a]mended.

*Id.* (brackets in original) (emphases in original) (footnotes omitted). Following trial, Elliott was convicted of the charged offenses. *Id.* at 309, 884 P.2d at 372.

> On appeal, the ICA recognized that the two counts of the oral charge omitted essential elements of the offenses charged, but ruled that a "liberal construction standard" applied and ... held that under that standard, because the two otherwise flawed counts "specifically referred to the statutes defining the offenses, and [Elliott] has claimed no prejudice resulting from the deficiencies in the oral charge," the omission of essential elements did not require reversal.

*Id.* at 311, 884 P.2d at 374 (brackets in original) (quoting *State v. Elliott*, 77 Hawai'i 314, 318, 884 P.2d 377, 381 (App.1994), *cert. granted*, 76 Hawai'i 247, 75 Haw. 581, 871 P.2d 795 (1994)).

Reviewing the ICA's opinion on application for writ of certiorari, this court agreed with the ICA that a "liberal construction standard" applied, but rejected the view that a mere statutory reference satisfied that standard. *Id.* We stated that, "unless the challenged counts can otherwise 'within reason be construed to charge [crimes],' the resisting arrest and assault against a police officer convictions must be reversed." *Id.* at 312, 884 P.2d at 375. Analyzing the language of the prosecution's oral charge, we concluded that the assault against a police officer charge was fatally defective because it did not allege that the offense was committed against "a police officer who [was] engaged in the performance of duty[.]" *Id.* at 313, 884 P.2d at 376 (some brackets added and some in original). The resisting arrest charge was defective because it completely omitted any reference to the requisite state of mind, and "we perceive[d] no way in which we could reasonably construe it to charge resisting arrest or any included offense." *Id.* Based upon the foregoing, we reversed Elliott's convictions of the offenses of assault against a police officer and resisting arrest. *Id.* However, we remanded for entry of judgment of conviction of assault in the third degree and resentencing in accordance therewith because, "without the element that the offense was committed against 'a police officer who [was] engaged in the performance of duty[,]' the defective count actually charged assault in the third degree." *Id.* We noted that "Elliott can claim no prejudice as a result of being convicted of assault in the third degree because assault in the third degree is an included offense of assault against a police officer, and the circuit court had the authority to convict Elliott of assault in the third degree if unable to convict of assault against a police officer." *Id.*

Per *Elliott*, the ICA should have remanded the matter for entry of judgment of conviction and resentencing as to the offense described by HRS §§ 291E–61(a) and (b)(1) (Supp.2004). Here, as with the assault against a police officer charge in *Elliott*, the prosecution's oral charge contained one factual accusation that could have supported two separate offenses. As previously noted, this court concluded that the prosecution's oral charge failed to sufficiently allege the

offense of assault against a police officer. However, the same factual accusation, absent the phrase, "a police officer who [was] engaged in the performance of duty," set forth the essential elements of the included offense of assault in the third degree. Similarly, the prosecution's oral charge in the case at bar failed to adequately set forth the essential elements of the offense described by HRS §§ 291E–61(a) and (b)(2) (Supp.2004). Nevertheless, absent the phrase "for your second offense," the prosecution's oral charge set forth the essential elements of the included offense described by HRS §§ 291E–61(a) and (b)(1) (Supp.2004). *See State v. Ruggiero*, 114 Hawai'i 227, 240, 160 P.3d 703, 716 (2007) (stating that a complaint mirroring only the provisions set forth in HRS § 291E–61(a)(1), and making no mention of the accused's status as either a first-time or multiple offender, sufficiently described the first-level OVUII offense under HRS §§ 291E–61(a) and (b)(1)); concurring and dissenting at 241, 160 P.3d at 718 (same) (Nakayama, J., and Moon, C.J., concurring and dissenting).

Insofar as the oral charge sufficiently alleged an offense under HRS §§ 291E–61(a) and (b)(1) (Supp.2004), our final inquiry is whether there was sufficient evidence to sustain a conviction thereunder. *See Elliott*, 77 Hawai'i at 313, 884 P.2d at 376 ("[B]ecause all of the essential elements of assault in the third degree were alleged in the oral charge *and proven at trial*, we hold that the appropriate remedy for Elliott's post-conviction challenge to the defective charge is to remand the case for entry of judgment of conviction of assault in the third degree and for resentencing in accordance therewith.") (Emphasis added.). Here, the record indicates that: (1) the vehicle in question was traveling at an extremely high rate of speed and weaving; (2) the driver of the vehicle did not initially respond to Officer Nishibun's blue lights and sirens, and Officer Miyashiro had to force the vehicle to stop by positioning himself in front of the vehicle and decelerating; (3) Kekuewa was seated in the driver's seat when the police approached the vehicle; (4) Kekuewa appeared to fumble with the locking mechanism when exiting the car; (5) Kekuewa had bloodshot and glassy eyes, emanated a strong odor of alcohol, had slurred speech, and appeared unsteady on his feet; and (6) Officer Gapusan testified that, in his lay opinion, Kekuewa was impaired based upon his performance on the field sobriety test. Viewed in the light most favorable to the prosecution, *see Viglielmo*, 105 Hawai'i at 202, 95 P.3d at 957 ("We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction[.]"), the foregoing evidence is sufficient to sustain a conviction under HRS §§ 291E–61(a)(1) and (b)(1) (Supp.2004).

## C. The Prosecution's Third Point of Error is Moot.

The prosecution's third point of error contends that there was sufficient evidence to convict Kekuewa of the offense of OVUII. That point is rendered moot by our discussion *supra*.

## IV.  CONCLUSION

Based upon the foregoing, we hold that: (1) the prosecution failed to offer a compelling justification to overrule *Domingues;* (2) the prosecution's oral charge sufficiently alleged a violation of HRS §§ 291E–61(a)(1) and (b)(1) (Supp.2004); and (3) the record contains sufficient evidence that Kekuewa committed the offense of OVUII under HRS §§ 291E–61(a)(1) and (b)(1) (Supp.2004). Therefore, we vacate Kekuewa's conviction of and sentence for the offense of OVUII under HRS §§ 291E–61(a) and (b)(2) (Supp.2004), and (3) remand the matter for entry of judgment of conviction of and resentencing for the offense of OVUII pursuant to HRS §§ 291E–61(a) and (b)(1) (Supp.2004). We further vacate the ICA's August 23, 2006 judgment to the extent that it reverses Kekuewa's conviction of and sentence for the offense of OVUII under HRS §§ 291E–61(a) and (b)(2) (Supp.2004).

Concurring and Dissenting Opinion By ACOBA, J.

I would (1) modify the holding in *State v. Domingues*, 106 Hawai'i 480, 107 P.3d 409 (2005), with respect to cases charged under

Hawai'i Revised Statutes (HRS) § 291–4.4 (Supp.2000)[1] after its repeal but (2) sustain the dismissal by the Intermediate Court of Appeals (the ICA) of any charge against Respondent/Defendant–Appellant Philip Kala Kekuewa, III (Respondent or Kekuewa) in this case for the reasons set forth herein.

Petitioner/Plaintiff–Appellee State of Hawai'i (Petitioner) filed an application for writ of certiorari[2] on November 6, 2006, requesting that this court review the August 23, 2006 judgment issued by the ICA pursuant to its August 10, 2006 published opinion,[3] reversing the March 22, 2005 judgment of the district court of the first circuit[4] adjudging Respondent guilty of Operating a Vehicle Under the Influence of an Intoxicant (OVUII), HRS § 291E–61 (Supp.2003).[5] In essence the ICA held that the oral accusa-

1. HRS § 291–4.4 entitled "Habitually driving under the influence of intoxicating liquor or drugs," stated in pertinent part:

   (a) *A person commits the offense of habitually driving under the influence of intoxicating liquor or drugs if, during a ten-year period the person has been convicted three or more times for a driving under the influence offense; and*
   (1) *The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor,* meaning that the person is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty;
   (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath[.]

   (Emphases added.) Effective January 1, 2002, HRS § 291–4.4 was repealed by 2000 Haw. Sess. L. Act 189, § 32 at 432.

2. Pursuant to HRS § 602–59 (Supp.2006), a party may appeal the decision of the intermediate appellate court (the ICA) only by an application to this court for a writ of certiorari. *See* HRS § 602–59(a). In determining whether to accept or reject the application for writ of certiorari, this court reviews the ICA decision for:

   (1) Grave errors of law or of fact; or
   (2) Obvious inconsistencies in the decision of the [ICA] with that of the supreme court, federal decisions, or its own decision,

   and the magnitude of such errors or inconsistencies dictating the need for further appeal. HRS § 602–59(b). The grant or denial of a petition for certiorari is discretionary with this court. *See* HRS § 602–59(a).

3. The ICA opinion was issued by Associate Judge John S.W. Lim, and joined by Chief Judge James S. Burns and Associate Judge Craig H. Nakamura.

4. The Honorable William A. Cardwell presided.

5. HRS § 291E–61 stated in pertinent part:

   (a) A person commits the offense of operating a vehicle under the influence of an intoxi-

cant if the person operates or assumes actual physical control of a vehicle:
   (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
   (2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;
   (3) With .08 or more grams of alcohol per two hundred ten liters of breath; or
   (4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.
   (b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation or suspension of sentence:
   (1) For the first offense, or any offense not preceded within a five-year period by a conviction for an offense under this section or section 291E–4(a):
   (A) A fourteen-hour minimum substance abuse rehabilitation program, including education and counseling, or other comparable program deemed appropriate by the court;
   (B) Ninety-day prompt suspension of license and privilege to operate a vehicle during the suspension period, or the court may impose, in lieu of the ninety-day prompt suspension of license, a minimum thirty-day prompt suspension of license with absolute prohibition from operating a vehicle and, for the remainder of the ninety-day period, a restriction on the license that allows the person to drive for limited work-related purposes and to participate in substance abuse treatment programs;
   (C) Any one or more of the following:
   (i) Seventy-two hours of community service work;
   (ii) Not less than forty-eight hours and not more than five days of imprisonment; or
   (iii) A fine of not less than $150 but not more than $1,000; and
   (D) A surcharge of $25 to be deposited into the neurotrauma special fund;
   (2) For an offense that occurs within five years of a prior conviction for an offense under this section or section 291E–4(a) by:
   (A) Prompt suspension of license and privilege to operate a vehicle for a period of one year with an absolute prohibition from operating a vehicle during the suspension period;

tion, which charged Kekuewa with OVUII "for your second offense," was insufficient under *Domingues*, inasmuch as "an offense that occurs within five years of a prior conviction for an offense under this section[,]" HRS § 291E–61(b)(2), is an attendant circumstance and, thus, an essential element of the OVUII offense which must be alleged in the accusation. *State v. Kekuewa*, 112 Hawai'i 269, 270–71, 145 P.3d 812, 813–14 (App. 2006). The ICA therefore reversed the conviction of OVUII. *Id.* at 277, 145 P.3d at 820.

## I.

In its application, Petitioner argued that "notwithstanding [*Domingues*], this honorable court should clarify that prior convictions pursuant to HRS § 291E–61(b)(1)–(3) *are not essential elements of the offense of OVUII*" (emphasis added) inasmuch as (a) "the plain language and legislative history of HRS § 291E–61(b)(1)–(3) does not indicate an intent· to make prior convictions an element of the offense of OVUII," (b) "the reasoning in *Domingues* that HRS § 291E–61(b)(1)–(3) are intrinsic and, thus, must be included in a charge pursuant to HRS § 291E–61 is a misapplication of the intrinsic/extrinsic analysis and is contrary to established Hawai'i and federal case law," and (c) "because prior convictions have traditionally

> (B) Either one of the following:
> (i) Not less than two hundred forty hours of community service work; or
> (ii) Not less than five days but not more than fourteen days of imprisonment of which at least forty-eight hours shall be served consecutively;
> (C) A fine of not less than $500 but not more than $1,500; and
> (D) A surcharge of $25 to be deposited into the neurotrauma special fund;
> (3) For an offense that occurs within five years of two prior convictions for offenses under this section or section 291E–4(a):
> (A) A fine of not less than $500 but not more than $2,500;
> (B) Revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years;
> (C) Not less than ten days but not more than thirty days imprisonment of which at least forty-eight hours shall be served consecutively; and
> (D) A surcharge of $25 to be deposited into the neurotrauma special fund[.]

been considered 'sentencing factors' and because the introduction of prior conviction evidence during the guilty phase of a trial is prejudicial to a defendant, the better interpretation of HRS § 291E–61 is that (b)(1)-(3) are sentencing factors rather than an element of the offense of OVUII"; (2) "the ICA erred in reversing [Respondent's] conviction rather than remanding for resentencing under HRS § 291E–61(b)(1)"; and (3) "there was sufficient evidence to convict [Respondent]." [6]

Respondent did not file a response to Petitioner's application.

On December 14, 2006, this court accepted Petitioner's application for writ of certiorari and ordered that the parties "file a supplemental brief addressing whether this court's interpretation of [HRS] § 291E–61(b) (Supp. 2002), in [*Domingues*], [*supra*], is applicable to the underlying prosecution commenced on October 11, 2004, given the subsequent amendments made to HRS § 291E–61(b) effective January 1, 2004." (Citing 2003 Haw. Sess. L. Act 71, § 1 at 123–24.). Act 71 of the 2003 legislature created a separate statutory section, HRS § 291E–61.5 (Supp.2004), for the felony offense of "Habitually Operating a Vehicle Under the Influence of an Intoxicant" [7] and defined the term "convic-

6. Some of the matters stated herein were set forth in the concurring and dissenting opinion in *State v. Ruggiero*, 114 Hawai'i 227, 243 n. 1, 160 P.3d 703, 719 n. 1 (2007) (Acoba, J., concurring and dissenting) ("*Kekuewa* should have been disposed of before the instant case.... The certiorari application in *Kekuewa* requests that *Domingues*, which is the controlling authority in this case, be reversed and, thus, confirmation of *Domingues* should precede its citation for the result in this case.").

7. I note that by separating the felony offense of "habitually driving under the influence of an intoxicant" from the misdemeanor offenses in enacting Act 71, the legislature in effect reinstated the separate statutory scheme separating DUI offenses under HRS § 291–4 as petty misdemeanor offenses from the stand alone provision of habitual DUI under HRS § 291–4.4, the repealed statute, under which *Domingues* had been charged.

tion." [8]   In regard to Act 71, the legislature stated,

> The purpose of this measure is to establish a status offense of habitually operating a vehicle under the influence of an intoxicant . . . .

> . . . .

> Your Committee finds that being punished as a status offender rather than receiving an enhanced sentence has distinct implications. *Status offenders receive a specific punishment as long as the offender meets the criteria at the time the offender reoffends.* The offender cannot defeat the charge by having a previous conviction reversed on a subsequent appeal. By contrast, enhanced sentences can be avoided if any prior convictions that are the basis for an enhanced sentence are overturned.

Your Committee believes it is important that the habitually impaired driver understand that he or she will be charged with a felony for any further impaired driving arrests, *even if one of their prior convictions is reversed after their arrest.*

Stand. Comm. Rep. No. 1268, in 2003 Senate Journal, at 1564 (emphases added).

On February 12, 2007, Petitioner filed its supplemental brief.   In addressing the foregoing amendments in its supplemental brief, Petitioner argued that the amendments did not impact this case.[9]   Respondent filed his supplemental brief on February 13, 2007, essentially agreeing that the amendments were not applicable.[10]   Hence, both parties agree *Domingues* applies in this case.   On March 21, 2007, this court held oral argument.

8.   HRS § 291E–61.5 stated in relevant part:

> (a) *A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:*
>
> (1) The person is a habitual operator of a vehicle while under the influence of an intoxicant; and
>
> (2) The person operates or assumes actual physical control of a vehicle:
>
> (A) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
>
> . . . .
>
> (b)  For the purposes of this section:
>
> "*Convicted three or more times for offenses of operating a vehicle under the influence*" means that, at the time of the behavior for which the person is charged under this section, the person had three or more times within ten years of the instant offense:
>
> (1) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for a violation of this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001;
>
> (2) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for an offense that is comparable to this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5; or
>
> (3) An adjudication of a minor for a law or probation violation that, if committed by an adult, would constitute a violation of this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5;
>
> *that, at the time of the instant offense, had not been expunged by pardon, reversed, or set aside.*

> All convictions that have been expunged by pardon, reversed, or set aside prior to the instant offense shall not be deemed prior convictions for the purposes of proving the person's status as a habitual operator of a vehicle while under the influence of an intoxicant.
>
> *A person has the status of a "habitual operator of a vehicle while under the influence of an intoxicant" if the person has been convicted three or more times within ten years of the instant offense,* for offenses of operating a vehicle under the influence of an intoxicant.
>
> (c) Habitually operating a vehicle while under the influence of an intoxicant is a class C felony.

2003 Haw. Sess. L. Act 71, § 1 at 123–24 (emphases added).

9.   According to Petitioner, "the plain language and legislative history of the amendments made to HRS § 291E–61(b), effective January 1, 2004, do not directly or indirectly effect this honorable court's statement in *Domingues* that the condition of prior convictions in HRS § 291E–61(b)(1)–(4) (Supp.2002) 'describes attendant circumstances,' i.e., elements" and that "unless the *Domingues* court's statement is dicta with respect to HRS § 291E–61(b)(1)–(3), then *Domingues* is applicable to the instant case."

10.   In his supplemental brief, Respondent argued that (1) "*Domingues* remains applicable to HRS § 291E–61 (Supp.2003)"; (2) the *Domingues* "holding regarding HRS § 291E–61(b)(1) through (b)(3) does not constitute dicta"; (3) "*Domingues* did not misapply the intrinsic/extrinsic analysis"; and (4) "any prejudice based on the prior convictions can and should be prevented."

## II.

First, I believe the holding in *Domingues* should be modified to conform it to the facts that were actually before us in that case. In order to uphold the indictment of Domingues, who had been charged under HRS § 291–4.4 after it had been repealed, the majority decided that "HRS § 291E–61 [ (Supp.2001), the new statute] which relates to operating a vehicle under the influence of an intoxicant, *substantially reenacted* HRS § 291–4.4[, the repealed statute.]" *Domingues,* 106 Hawai'i at 482, 107 P.3d at 411 (emphasis added).

In *Domingues,* the defendant was tried under "HRS § 291–4.4(a)(1) and/or 291–4.4(a)(2)." 106 Hawai'i at 483, 107 P.3d at 412. The oral charge stated in relevant part:

Kyle Evan Domingues did operate or assume actual physical control of the operation of any vehicle *while under the influence of intoxicating liquor ... and had been convicted three or more times for driving under the influence offenses during a ten-year period, and/or* did operate or assume actual physical control of the operation of any vehicle while with .08 or more grams of alcohol per one hundred milliliters, ... and had *been convicted three or more times for driving under the influence offenses during a ten year period,* thereby committing the *offense of Habitually Driving Under the Influence of Intoxicating Liquor or Drugs, in violation of Sections 291–4.4(a)(1) and/or 291–4.4(a)(2) of the [HRS].*

*Id.* (emphases in original) (capitalization omitted). As noted before, *see supra* note 1, in that connection, HRS § 291–4.4 stated in pertinent part:

**Habitually driving under the influence of intoxicating liquor of drugs.** (a) A person commits the offense of habitually driving under the influence of intoxicating liquor or drugs if, *during a ten-year period the person has been convicted three or more times* for a driving under the influence offense[.]

. . . .

(c) *Habitually driving under the influence of intoxicating liquor or drugs is a class C felony. . . .*

(Emphases added.)

The new statute, HRS § 291E–61(a) and (b)(4), under which Domingues was not charged but that was in effect at the time Domingues was charged, provided in pertinent part as follows:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol . . . .

. . . .

(b) A person committing the offense of operating a vehicle under the influence of an intoxicant *shall be sentenced* as follows without possibility of probation or suspension of sentence:

. . . .

(4) *For an offense that occurs within ten years of three or more prior convictions* for offenses under this section, section 707–702.5, or section 291E–4(a):

. . . .

*An offense under this paragraph is a class C felony.*

(Emphases added.) As the dissent in *Domingues* indicated, the new statute, "HRS § 291E–61[,] convert[ed] what had been an *element* of the offense under HRS § 291–4.4, *i.e.* that the accused had been convicted three or more times ... [,] into a *sentencing* factor[,]" *Domingues,* 106 Hawai'i at 496, 107 P.3d at 425 (Acoba, J., dissenting, joined by Nakayama, J.) (emphases added). Thus the new statute, HRS § 291E–61, was not a substantial reenactment of HRS § 291–4.4. The question of whether HRS § 291E–61 itself was constitutionally valid was not before us. The majority response to this, however, was to judicially convert the express "sentencing" factors into elements, thus saving the constitutionality of the new statute, an issue which, again, was not an issue before us.

The majority proceeded to decide that the "sentencing" provisions in the new statute,

HRS § 291E–61(b)(1)–(3),[11] pertaining to petty misdemeanor offenses of varying sanctions, must be considered with HRS § 291E–61(b)(4), the Class C felony offense, as establishing a "hierarchy of offenses." *Domingues*, 106 Hawai'i at 487, 107 P.3d at 416. As such, according to the majority, references to the number of convictions must be treated as "attendant circumstances," *id.* (citing HRS § 702–205 (1993)), and, thus, as elements of the offenses. The majority accomplished this by "judicially imprint[ing] on HRS § 291E–61" constitutional due process requirements. *Id.* at 498, 107 P.3d at 427 (Acoba, J., dissenting, joined by Nakayama,

J.). This, in effect, nullified the express statutory language that "[made] the three prior conviction condition a sentencing factor" and transformed such a factor into "an element of the offense." *Id.* (Acoba, J., dissenting, joined by Nakayama, J.).

As Petitioner correctly states, "[t]he ultimate issue in *Domingues* was whether HRS § 291E–61(b)(4) (Supp.200[1]) (since repealed) was a 'substantial reenactment' of HRS § 291–4.4 (Supp.200[0])." As noted above, to support its conclusion that HRS § 291E–61(b)(1)–(4) was a "substantial reenactment" of HRS § 291–4 [12] and 291–4.4, the

11. In pertinent part, HRS § 291E–61(b)(1)–(3) concerned petty misdemeanors as follows:

(b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without the possibility of probation or suspension of sentence:

(1) For the first offense . . .:

. . . .

(C) Any one or more of the following:

. . . .

(ii) *Not less than forty-eight hours and not more than five days imprisonment*

(iii) A fine of not less than $150 but not more than $1000

. . . .

(2) For an offense that occurs within five years of a prior conviction[:]

. . . .

(B)

. . . .

(ii) *Not less than five days but not more than fourteen days of imprisonment*[.]

(C) A fine of not less than $500 but not more than $1,500;

. . . .

(3) For an offense that occurs within five years of two prior convictions[:]

(A) A fine of not less than $500 but not more than $2,500;

. . . .

(C) *Not less than ten days but not more than thirty days imprisonment* of which at least forty-eight hours shall be served consecutively[.]

(Emphases added.)

12. HRS § 291–4 (Supp.2000) entitled "Driving under the influence of an intoxicating liquor," stated in pertinent part:

(a) A person commits the offense of driving under the influence of intoxicating liquor if:

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's

normal mental faculties or ability to care for oneself and guard against casualty; or

(2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath.

(b) A person committing the offense of driving under the influence of intoxicating liquor shall be sentenced as follows without possibility of probation or suspension of sentence:

(1) For the first offense, or any offense not preceded within a five-year period by a conviction for driving under the influence of intoxicating liquor under this section or section 291–4.4 by:

. . . .

(C) Any one or more of the following:

(i) Seventy-two hours of community service work;

(ii) Not less than forty-eight hours and not more than five days of imprisonment; or

(iii) A fine of not less than $150 but not more than $1,000.

(2) For an offense that occurs within five years of a prior conviction for driving under the influence of intoxicating liquor under this section or section 291–4.4 by:

. . . .

(B) Either one of the following:

(i) Not less than two hundred forty hours of community service work; or

(ii) *Not less than five days but not more than fourteen days of imprisonment* of which at least forty-eight hours shall be served consecutively; and

(C) A fine of not less than $500 but not more than $1,500.

(3) For an offense that occurs within five years of two prior convictions for driving under the influence of intoxicating liquor under this section or section 291–4.4 by:

(A) A fine of not less than $500 but not more than $2,500;

. . . .

(C) *Not less than ten days but not more than thirty days of imprisonment* of which at

majority restyled the new sentencing provisions in HRS § 291E–61(b)(1)–(4) into elements to conform to an elemental status already established for the offenses in HRS §§ 291–4 and 291–4.4, the repealed statutes. Petitioner astutely observes that, "[t]he *Domingues* court [ (referring to the majority) ] implicitly concluded that, in order to be a 'substantial reenactment,' a subsequent statute must contain the same elements as the repealed statute[, HRS § 291–4.4]." (Citing *Domingues,* 106 Hawai'i at 485–86, 107 P.3d at 414–15.).

In deciding that the sentencing factors in HRS § 291E–61(b)(1)–(4) must be treated as elements to preserve the constitutionality of the new statute, in spite of its express language, "the [majority] ... establish[ed] that the new statute, HRS § 291E–61 must be judicially impressed with due process requirements ... substantiating, indeed, that the new statute [was] *not* a substantial *reenactment* of the repealed one." *Domingues,* 106 Hawai'i at 498, 107 P.3d at 427 (Acoba, J., dissenting, joined by Nakayama, J.) (emphases in original). Thus, "the majority ... decide[d] whether an indictment brought pursuant to the *new* statute, HRS § 291E–61, under which Defendant ha[d] *not* been charged, can be saved in the face of a due process challenge that Defendant ha[d] *not* brought." *Id.* (emphases added).

### III.

That notice must be given of the elements required to be proven is a salutary proposition. But that was of no consolation to Domingues and other such defendants similarly situated who had been charged under HRS § 291–4.4, after its repeal, but whose convictions were nevertheless upheld. Based on the language of the oral charge and of HRS § 291–4.4, there plainly was no question that Domingues was, "as a matter of basic due process, ... put on sufficient notice of the nature and cause of the accusation with which he is charged." *Id.* at 487, 107 P.3d at 416 (internal quotation marks and citations omitted).

least forty-eight hours shall be served consecutively.

Hence, with all due respect, the majority is, at the least, inaccurate in its contention that "construing HRS §§ 291E–61(b)(1)–(4) (Supp.2002) as extrinsic sentencing factors would have raised serious concerns ..., given a defendant's inability to ascertain the class and grade of the offense charged (*i.e.,* a petty misdemeanor or a class C felony) and whether the right to a jury has ... attached." Majority opinion at 420, 163 P.3d at 1157. No concerns arose in *Domingues* because the ability of Domingues and others similarly situated to ascertain the grade and class of the offense charged was unquestioned: The oral charge and HRS § 291–4.4 under which Domingues was charged on their faces made the three convictions/ten-year requirement an element of the offense.

Indeed, this had been previously and expressly confirmed by the legislature. As set forth in *State v. Shimabukuro,* 100 Hawai'i 324, 60 P.3d 274 (2002):

> According to the legislative history of HRS § 291–4.4, the requisite prior DUI convictions were considered an element of the offense. See House Stand. Comm. Rep. No. 844, in 1995 House Journal, at 1345 ("This bill already includes as an element of habitually driving under the influence, three convictions for DUI." (Emphasis added.)). The purpose of HRS § 291–4.4 was to "establish a felony offense for those who are convicted of habitually driving under the influence of intoxicating liquors or drugs." Id.

*Id.* at 328 n. 12, 60 P.3d at 278 n. 12 (Acoba, J., announcing the judgment of the court) (emphasis in original and emphasis added). Conversely, treatment of the three conviction requirement as a sentencing factor under HRS § 291–4.4 had been expressly rejected by the legislature. As *Shimabukuro* pointed out,

> [t]he House Judiciary Committee also considered, but did not adopt, the Office of the Public Defender's position that "the philosophy established in the Penal Code to address the repeat offender is by way of *enhanced penalties,* rather than an elevation of the classification of the offense."
>
> . . . .

*Id.* (emphasis added). Hence, the legislature did not intend that HRS § 291–4.4 be viewed as a sentencing enhancement statute.

*Id.* (emphasis in original). As the dissent in *Domingues* related, "[n]o due process violation occurred [t]here because Defendant was charged with Habitual DUI under HRS § 291–4.4. Under that statute, three prior convictions was an element of the offense of Habitual DUI, which required the prosecution to allege and prove the prior convictions." *Domingues,* 106 Hawai'i at 499, 107 P.3d at 428 (Acoba, J., dissenting, joined by Nakayama, J.). Because the charges against Domingues rested on the *stand-alone* provision of HRS § 291–4.4, *see supra, and* HRS § 291–4.4 *incorporated the three conviction/ten-year requirement as elements,* the majority's discussion regarding due process, as it pertained to Domingues, was, as Petitioner aptly points out, "dicta."

Thus it is not surprising that in *Domingues* the "element" proposition "was not argued or briefed by the parties, or decided by the [circuit] court. No factual basis exist[ed] in the record for [its] application[.]" 106 Hawai'i at 499, 107 P.3d at 428 (Acoba, J., dissenting, joined by Nakayama, J.). The excursion of the *Domingues* majority into a constitutional evaluation of HRS § 291E–61(b)(1)–(4) was neither relevant nor appropriate to the charge brought against Domingues. There simply was no constitutional issue in *Domingues.*

Hence, there was no "constitutional doubt in *Domingues* ... [as to whether] a defendant charged under HRS § 291E–61 (Supp. 200[1]) would not have had sufficient notice of (1) whether he or she was charged with a petty misdemeanor or a class C felony, and (2) whether he or she was entitled to a jury[,]" majority opinion at 421, 163 P.3d at 1158, as the majority contends. Because the specific language in *Domingues* informed the defendant he was being charged with having three convictions in ten years, a class C felony, the charge and HRS § 291–4.4 were clear, plain, and definite. The majority ignores the fact that the so-called constitutional doubt would arise only were the defendant charged under the new HRS § 291E–61,

which Domingues obviously was not. The constitutional analysis which had no application to Domingues was invoked to render HRS § 291E–61 substantially similar to HRS § 291–4.4, thus preserving Domingues's conviction, a result only achievable by reconstituting the "substantially similar" question into a constitutional question not before this court.

## IV.

I believe, therefore, that the foregoing matters constitute compelling justification for reversing that part of the decision pertaining to charges brought under HRS § 291–4.4 against Domingues. *See State v. Garcia,* 96 Hawai'i 200, 206, 29 P.3d 919, 925 (2001) (stating that "a court should 'not depart from the doctrine of stare decisis without some *compelling justification*'" (quoting *Hilton v. South Carolina Pub. Ry. Comm'n,* 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (emphasis in original) (other citation omitted))).

Alternatively, the majority's construction of HRS § 291–4.4 and HRS § 291E–61 should be corrected on the grounds set forth above. *See State v. Brantley,* 99 Hawai'i 463, 465, 56 P.3d 1252, 1254 (2002) (explaining that "this court has long recognized, we not only have the right but are entrusted with a duty to examine the former decisions of this court and, when reconciliation is impossible, to discard our former errors" (citation omitted), and overruling *State v. Jumila,* 87 Hawai'i 1, 950 P.2d 1201 (1998)).

The majority's inconsistent response to Petitioner's argument that prior convictions are extrinsic factors that need not be alleged in a charge is that "prior convictions[ ] [are] generally a fact or circumstance extrinsic to the charged offense[,]" but "prior convictions were intrinsic to, or enmeshed in, the habitual OVUII offenses[.]" Majority opinion at 423, 163 P.3d at 1160. As Judge Lim, writing for the ICA noted,

[Respondent's] primary argument on appeal is that *Domingues's* designation of certain prior DUI convictions as essential elements intrinsic to a DUI offense that must be alleged in the charge and deter-

mined by the trier of fact, *Domingues*, 106 Hawai'i at 487–88, 107 P.3d at 416–17, *cuts directly against the grain of the supreme court's Tafoya precedents and federal Apprendi jurisprudence, which exempt historical facts and prior convictions, respectively—in other words, factors extrinsic to an offense—from the dual requirement of allegation and determination by the trier of fact.* State v. Tafoya, 91 Hawai'i 261, 271, 982 P.2d 890, 900 (1999); *Apprendi v. New Jersey,* 530 U.S. 466, 490[, 120 S.Ct. 2348, 147 L.Ed.2d 435] (2000).

*Kekuewa,* 112 Hawai'i at 276 n. 6, 145 P.3d at 819 n. 6. (emphasis added). The majority justifies this diversion on the ground that "unique circumstances" were present in *Domingues*—without describing what such "unique circumstances" were. Majority opinion at 423, 163 P.3d at 1160.

The conflict between denominating a prior conviction as an "extrinsic" factor in this court's precedents but on the other hand as an "intrinsic" factor, in this case, does not manifest "unique circumstances," but the inherent limitations of an analysis based on an extrinsic/intrinsic formula. Accordingly, this is not a ground for rejecting the erroneous application of HRS § 291E–61 to Domingues. *See Brantley,* 99 Hawai'i at 465, 56 P.3d at 1254. Therefore, on the grounds stated above, I would reverse that portion of the *Domingues* decision concluding that HRS § 291–4.4 as it pertained to Domingues was substantially re-enacted, vindicating the circuit court's decision that Domingues could not be charged under a statute that had already been repealed.

### V.

Second, the case decided in *Domingues* by the majority that was not there, is now here. As noted in the dissent, "[t]he majority's holding ... constitutes an advisory opinion to one side on how future cases under the *new* statute may be saved from motions for dismissal." 106 Hawai'i at 499, 107 P.3d at 428 (Acoba, J., dissenting, joined by Nakayama, J.) (emphasis in original). Kekuewa was charged generally under HRS § 291E–61 (the previously new statute) and convicted under HRS § 291E–61(b)(2). While I believe Petitioner is accurate in its reading of the *Domingues* majority opinion, "the due process challenge that Domingues [had] not brought," *id.* at 498, 107 P.3d at 427 (Acoba, J., dissenting, joined by Nakayama, J.), because not germane to the facts in *Domingues,* is now raised by Respondent in this case.

HRS § 291E–61(b)(1)–(3) expressly charged a petty misdemeanor for designated prior intoxicant convictions, but with differing ranges for terms of imprisonment from forty-eight hours to five days for a first offense, 291E–61(b)(1)(C)(ii); five days to fourteen days, 291E–61(b)(2)(B)(ii) for a second offense; ten days to thirty days, 291E–61(b)(3)(C) for a third offense. Thus, in effect, HRS § 291E–61(b)(1)–(3), as it applied at the time of the offense, referred to three separate petty misdemeanor offenses.

### VI.

After the close of all evidence at trial, Kekuewa brought a "motion to dismiss based on a defective charge." *Kekuewa,* 112 Hawai'i at 274, 145 P.3d at 817. To reiterate, Kekuewa was charged as follows:

[Kekuewa], on or about the 15th day of April 2004, in the City and County of Honolulu, State of Hawaii, island of Oahu, you did *operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair your normal mental faculties or the ability to care for yourself and guard against casualty thereby violating Section 291E–61 of the [HRS] for your second offense.*

*Id.* at 271, 145 P.3d at 814 (emphasis added). Defense counsel argued that "[t]he prosecutor did not specify the attendant circumstances in the complaint [with] what he orally charged." *Id.* at 274, 145 P.3d at 817. Defense counsel further argued, "[B]ased on that, [Petitioner's] failure to outline the attendant circumstances in his oral charging of [Kekuewa], we ask the [c]ourt to dismiss the case based on a defective charge." *Id.* The court denied the motion stating, "[M]y notes reflect that at the time of arraignment [Petitioner], in fact, did charge, arraign him as a

second [offender] and did include the attendant circumstances." *Id.* at 275, 145 P.3d at 818. Kekuewa was thereafter convicted of driving under the influence of an intoxicant, in violation of HRS § 291E–61(b)(2) (Supp. 2003).

## VII.

This court has stated:

> The accusation must sufficiently allege all of the essential elements of the offense charged. This requirement obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint, and *the omission of an essential element of the crime charged is a defect in substance rather than of form.* A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained for that would constitute a denial of due process. This requirement may not be waived or dispensed with, and the defect is ground for reversal, even when raised for the first time on appeal.

*State v. Elliott,* 77 Hawai'i 309, 311, 884 P.2d 372, 374 (1994) (quoting *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977) (citations omitted)). In *Domingues,* a majority of this court observed that the "prefatory language of *HRS § 291E–61(b)(1) through 291E–61(b)(4) describes attendant circumstances* that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E–61 as a whole describes." 106 Hawai'i at 487, 107 P.3d at 416 (citing HRS § 702–205) (emphasis added).

Thus, in order to convict Kekuewa of HRS § 291E–61(b)(2), the prosecution had to prove beyond a reasonable doubt that Kekuewa (1) "operate[d] or assume[d] actual physical control of the operation of [a] vehicle" (2) "while under the influence of alcohol in an amount sufficient to impair [his] normal mental faculties or ability to care for the person and guard against casualty[,]" *see State v. Cummings,* 101 Hawai'i 139, 143–44, 63 P.3d 1109, 1113–14 (2003), *and* (3) the offense "occur[red] within five years of a prior conviction for driving under the influence of intoxicating liquor under [HRS § 291E–61] or [HRS § ]291–4.4[.]" *Domingues,* 106 Ha-

wai'i at 487, 107 P.3d at 416. Petitioner was likewise required to charge these essential elements in order to convict Kekuewa of violating HRS § 291E–61(b)(2). *See Cummings,* 101 Hawai'i at 143–44, 63 P.3d at 1113–14.

## VIII.

Plainly the reference only to "a second offense" in the charge against Kekuewa fails under HRS § 291E–61 to designate the particular petty misdemeanor offense charged and to "sufficiently allege all the essential elements of the offense[.]" *State v. Sprattling,* 99 Hawai'i 312, 316, 55 P.3d 276, 280 (2002) (internal quotation marks and citation omitted). Under these circumstances the failure to charge in the specific section and the operative language therein would not sufficiently apprise a layperson of the charge brought. As Judge Lim stated in his opinion, "[t]he five-year time period omitted from the oral charge was a critical part of the HRS § 291E–61(b)(2) attendant circumstances, one with especial resonance in this case in light of [Kekuewa's] several prior [OVUII] convictions." *Kekuewa,* 112 Hawai'i at 277, 145 P.3d at 820. The oral charge failed to sufficiently allege "the essential element[ ]," *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374, that the offense "occur[red] within five years of a prior conviction for driving under the influence of intoxicating liquor under [HRS § 291E–61] or [HRS § ] 291–4.4[,]" for a conviction of HRS § 291E–61(b)(2). *See Domingues,* 106 Hawai'i at 487, 107 P.3d at 416.

The ICA explained that "[i]ts inclusion was required, and 'that requirement is not satisfied by the fact that [Kekuewa] actually knew the essential elements of the offense charged and was not misled by the failure to sufficiently allege all of them.'" *Kekuewa,* 112 Hawai'i at 277, 145 P.3d at 820 (quoting *Cummings,* 101 Hawai'i at 143, 63 P.3d at 1113) (other citation and brackets omitted). Furthermore, as the ICA observed, "'citing to a statutory reference does not cure a charge that merely states an element of the offense in generic terms.'" *Id.* (quoting *Cummings,* 101 Hawai'i at 143, 63 P.3d at 1113 (citing *Elliott,* 77 Hawai'i at 311, 884

P.2d at 374)). The ICA was thus correct in concluding that "the oral charge in this case was defective, and that [Kekuewa's] oral motion to dismiss should have been granted." *Id.* at 277, 145 P.3d at 820.

The majority opinion in *Domingues* instructed Petitioner "on how future cases under the *new* statute[, HRS § 291E–61(b)(1)– (4),] may be saved from motions to dismiss." 106 Hawai'i at 499, 107 P.3d at 428 (Acoba, J., dissenting, joined by Nakayama, J.) (emphasis in original). Petitioner failed to follow that advice as to the petty misdemeanor offense in HRS § 291E–61(b)(2). Consequently, the charge "amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process." *Cummings,* 101 Hawai'i at 142, 63 P.3d at 1112 (internal quotation marks and citations omitted). The conviction, then, must be reversed and the motion to dismiss brought by Respondent, sustained.

### IX.

However, contrary to the ICA's decision, the majority maintains that "the ICA should have remanded the matter for entry of judgment of conviction and resentencing as to the offense described by HRS §§ 291E–61(a) and (b)(1) (Supp.2004)." Majority opinion at 425, 163 P.3d at 1162. Excising "for your second offense" from the oral charge, the majority proposes that the remaining language, that Kekuewa "did operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair [his] normal mental faculties or the ability to care for [him]self and guard against casualty thereby violating Section 291E–61 of the [HRS] for your second offense[,]" *Kekuewa,* 112 Hawai'i at 271, 145 P.3d at 814, "set forth the essential elements of the [included] offense described by HRS §§ 291E–61(a) and (b)(2) (Supp.2004)[,]" majority opinion at 425–26, 163 P.3d at 1162–63.

The majority purportedly relies on *Elliott* but merely recites the framework of that case. In *Elliott,* the included third degree assault offense was said to be included in the greater defective charge of assault against a police officer. Thus, "because all of the essential elements of assault in the third degree were alleged in the oral charge and proven at trial[,]" this court concluded that "the appropriate remedy for [the defendant's] post-conviction challenge to the defective charge [was] to remand the case for entry of judgment of conviction of assault in the third degree." *Elliott,* 77 Hawai'i at 313, 884 P.2d at 376.

That is not the case here. On the faces of HRS §§ 291E–61(a) and (b)(1), HRS § 291E–61(a) contains *only* the definition of "Operating a vehicle under the influence of an intoxicant," and does not charge an offense. Under the precedent established by *Domingues,* the definition of OVUII must be tied to either one of three misdemeanor and one felony offense. *See Domingues,* 106 Hawai'i at 487, 107 P.3d at 416 (stating that "prefatory language of *HRS § 291E–61(b)(1) through [§ ]291E–61(b)(4) describes attendant circumstances* that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E–61 as a whole describes" (citing HRS § 702–205 (emphasis added))). The remaining language in the charge against Kekuewa is completely devoid of such a connection.

Applying *Domingues,* the remaining language cannot be construed to allege either a "first offense, or any offense not preceded within a five-year period by a conviction for an offense under [HRS § 291E–61] or [HRS § ]291E–4(a)[,]" alternative elements for a conviction under HRS § 291E–61(b)(1). *See Domingues,* 106 Hawai'i at 487, 107 P.3d at 416; *Ruggiero,* 114 Hawai'i at 255, 160 P.3d at 731 (Acoba, J., concurring and dissenting). Pursuant to *Domingues, there is no generic OVUII offense. See Ruggiero,* 114 Hawai'i at 255, 160 P.3d at 731 (Acoba, J., concurring and dissenting). Hence, in this case, the offense listed in 291E–61(b)(1) cannot be "included" in the purportedly greater offense in 291E–61(a) because subsection (a) itself merely describes OVUII conduct and does not set forth *any* offense at all.

### X.

Until *Ruggiero,* this court has never held that a charge may be sustained if an element

is only "implicit" in the charge. The long-standing precedent in this jurisdiction is that *"an oral charge, complaint, or indictment that does not state an offense contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity."* *Cummings,* 101 Hawai'i at 142, 63 P.3d at 1112 (citing *State v. Israel,* 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995) (other citations omitted)) (emphasis added). As such, because the charge against Kekuewa did not allege an offense, it was properly dismissed in its entirety.

*Ruggiero* invites a sea change in the long and well established due process protection against defective charges, and at the very least places such protection on uncertain footing. With all due respect, the extension of *Ruggiero* to this case, sacrifices that due process principle to the result reached in this case.[13] In light of the adverse constitutional implications of the majority's ruling, I would adhere to the principle of due process protection, as did the ICA.

---

**13.** Also, the *Ruggiero* plurality's contention that "it would also have fallen within the prosecution's discretion to charge the lesser included offense of DUI as a first-time offense[,]" 114 Hawai'i at 240, 160 P.3d at 716 (Levinson, J., announcing the judgment of the court) (citing *State v. Holbron,* 80 Hawai'i 27, 44, 904 P.2d 912, 929 (1995) ("Within constitutional limits, it is *always* the prosecution's prerogative to under-charge any offense for whatever reason it deems appropriate...." (Emphasis in original.)); *State v. Mendonca,* 68 Haw. 280, 283, 711 P.2d 731, 734 (1985) (other citation omitted)), is, with all due respect, simply erroneous, since there is no dispute that the prosecution expressly sought to charge a "second conviction" offense, and was not exercising its discretion to "under charge."