LAW LIBRARY

NO. 28430

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JEAN R. KIKUMOTO CLERK, APPELLATE COURTS STATE OF HAWAII

2010 JUL 22 AM 7:55

FILED

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
STEVEN A. FREITAS, Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
KANEOHE DIVISION
(HPD Criminal No. 6026023MO)
(1P405-01655)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley, Ginoza, JJ.)

Defendant-Appellant Steven A. Freitas (Freitas) appeals the Notice of Entry of Judgment and/or Order (judgment) filed on February 2, 2007 in the District Court of the First Circuit, Kane'ohe Division (district court)[1] convicting him of the petty misdemeanor of disorderly conduct[2] occurring on November 20, 2005, in violation of Hawaii Revised Statutes (HRS) § 711-1101 (1993 & Supp. 2005).[3]

---

[1] The Honorable T. David Woo presided.

[2] Although the district court did not state that the conviction was for a petty misdemeanor, the district court sentenced Freitas, inter alia, to six months probation. HRS § 706-623(1)(d) (Supp. 2006), the statute in effect at the time of sentencing on February 2, 2007, provides for six months probation "upon conviction of a petty misdemeanor."

[3] HRS § 711-1101 states:

§711-1101 Disorderly conduct. (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:

(a) Engages in fighting or threatening, or in violent or tumultuous behavior; or

(b) Makes unreasonable noise; or

(c) Subjects another person to offensively coarse behavior or abusive language which is likely to provoke a violent response; or

(continued...)

On appeal, Freitas contends that:

(1) The disorderly conduct charge was defective. First, he contends the district court erred in denying his motions to dismiss the charge as a petty misdemeanor because it lacked the essential elements for a petty misdemeanor. Second, although raised by Freitas for the first time on appeal, he contends this court should reverse the conviction because the alternatives for "unreasonable noise" were charged in the disjunctive;

(2) The district court erred in convicting Freitas of a petty misdemeanor rather than a violation; and

(3) There was insufficient evidence that Freitas made "unreasonable noise" to support either a violation or a petty misdemeanor.

The State does not contest that the charge was defective for purposes of charging a petty misdemeanor. However, the State asserts that the oral charge was adequate to charge

---

[3](...continued)

> (d) Creates a hazardous or physically offensive condition by any act which is not performed under any authorized license or permit; or
>
> (e) Impedes or obstructs, for the purpose of begging or soliciting alms, any person in any public place or in any place open to the public.
>
> (2) Noise is unreasonable, within the meaning of subsection (1)(b), if considering the nature and purpose of the person's conduct and the circumstances known to the person, including the nature of the location and the time of the day or night, the person's conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the same situation; or the failure to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced.
>
> The renter, resident, or owner-occupant of the premises who knowingly or negligently consents to unreasonable noise on the premises shall be guilty of a noise violation.
>
> (3) Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.

2

disorderly conduct as a violation, and that substantial evidence existed to support a conviction as a violation.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we vacate the district court's judgment of February 2, 2007 and remand for the reasons set forth below.

I.  Background

This case arises from complaints on November 20, 2005 of loud music coming from a house located at 44-329 Kaneohe Bay Drive.  The complaints were of loud drumming and singing coming from the house over several hours.

Just prior to the trial on February 2, 2007, the following oral charge was presented to Freitas:

> Mr. Freitas, on or about November 20th, 2005, in the City and County of Honolulu, State of Hawaii, with the intent to cause physical inconvenience or alarm by a member or members of the public, you reckless, or recklessly creating a risk thereof, you did make unreasonable noise defined as a gross deviation from law-abiding citizen's conduct given the nature and purpose of your conduct, location and time of day, or a failure to heed a peace officer's warning that the noise is unreasonable and should be stopped, thereby committing the offense of Disorderly Conduct in violation of Section 711-1101(1)(b) of the Hawaii Revised Statutes. . . .

During the trial, the district court heard testimony from the complaining witness Gordon Uptmor, Police Officer Theodore Hackbarth, Police Officer Kenneth Tjomsland, and defendant Freitas.  At close of the State's case, Freitas orally moved for dismissal on grounds that the charge was defective for failing to assert a petty misdemeanor.  The trial court denied the motion.  Freitas reasserted the contention in closing argument.

At the conclusion of the trial, the district court made the following findings and conclusions:

> . . . [The] music commenced at about 10 o'clock in the morning and continued unabated until police officers finally showed up in response to Mr. Uptmor's call, calls.

> Despite the fact that officers came to defendant's residence and informed him that the music was loud and to

3

turn it down, the defendant continued to persist in playing loud music with other persons and this resulted in multiple visits to his house by the police officers.

The Court has observed the demeanor of Mr. Uptmor and also in light of the fact that the witness is a minister, the Court has concluded from observing his demeanor and the manner in which the witness testified that he is not a person that is overly sensitive to music and that he was, in fact, seriously inconvenienced by the loudness of this music.

The Court finds that Mr. Uptmor has made thirty to forty calls to 911 requesting the police to assist him in getting the defendant to tone down the music, and the Court finds that based on the fact that there were so many repetitive complaints made, the defendant was well aware of the fact that playing this loud music was offensive to neighbors and that he intended to play music at such a volume.

The Court finds that Officer Hackbarth went to defendant's house, observed the defendant playing music there, and in the words of Officer Hackbarth, the music was extremely loud, it was amplified. The sound pressure of the music was so loud that you could palpably feel the percussive sound pressure of this music.

And as the officer testified, it was, let's see, officer testified too that defendant's attitude was totally defiant, and in the case of Officer Tjomsland, he gave that officer the definite impression that the defendant did not intend to comply with the officer's warnings to quiet the music down.

Both officers testified that upon exiting their automobiles the music was so loud that they were able to hear the music immediately upon getting out of their cars. In the case of Officer Tjomsland, he said possibly eighty feet away he could hear that, okay.

Court definitely finds that this was not unamplified music. When the officers were there talking to defendant, one guitarist kept playing so loudly that they couldn't converse with the defendant. Court finds that that is definitely not an unamplified guitar.

At any rate, the Court finds that this music was exceedingly loud and it's really loud, unreasonably so and not, and I would say within the meaning of the statute, it's unreasonable noise. The Court, therefore, finds that the State has proven their case beyond the reasonable doubt. I find the defendant guilty as charged. . . .

II. Sufficiency of the Charge

"'Whether [a charge] sets forth all the essential elements of [a charged] offense . . . is a question of law[,]' which we review under the *de novo*, or 'right/wrong,' standard." State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177

4

(2009) (quoting State v. Wells, 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995)).

A.   The Oral Charge Did Not Sufficiently Charge Disorderly Conduct as a Petty Misdemeanor.

As apparently conceded by the State, the oral charge prior to trial did not charge the disorderly conduct offense as a petty misdemeanor.  The charge failed to cite to the petty misdemeanor subsection HRS § 711-1101(3).  It also failed to include allegations of Freitas' "intention to cause substantial harm or serious inconvenience" or allegations of Freitas "persist[ing] in disorderly conduct after reasonable warning or request to desist[.]"  See State v. Moser, 107 Hawai'i 159, 167, 111 P.3d 54, 62 (App. 2005) (footnote omitted) ("The Complaint did not charge Moser with disorderly conduct as a petty misdemeanor, nor allege any operative facts that would apprise Moser that she was being charged with the petty misdemeanor offense").

Consequently, the district court erred in denying Freitas' motion to dismiss on these grounds and in convicting Freitas of disorderly conduct as a petty misdemeanor.

B.   Freitas Raises a Post-Conviction Challenge that the Charge Asserts Disjunctive Alternative Bases for "Unreasonable Noise"

During the district court proceedings, Freitas did not object that the charge was defective on grounds that the alternatives for "unreasonable noise" were charged in the disjunctive.  Instead, Freitas raises this issue for the first time on appeal and now takes issue with the part of the charge that stated:

> . . . you did make unreasonable noise defined as a gross deviation from law-abiding citizen's conduct given the nature and purpose of your conduct, location and time of day, or a failure to heed a peace officer's warning that the noise is unreasonable and should be stopped ...

(Emphasis added).  Freitas relies on State v. Jendrusch, 58 Haw. 279, 567 P.2d 1242 (1977), in which the Hawai'i Supreme Court noted that where different types of conduct were proscribed under

5

different sections of a statute, charging the defendant in the disjunctive rather than in the conjunctive "left the defendant uncertain as to which of the acts charged was being relied upon as the basis for the accusation against him." Id. at 283 n.4, 567 P.2d at 1245 n.4.[4]  The court thus stated that "[w]here a statute specifies several ways in which its violation may occur, the charge may be laid in the conjunctive but not in the disjunctive." Id.  (citing Territory v. Lii, 39 Haw. 574, 1952 WL 7385 (Haw. Terr. 1952)).

We resolve this point of error against Freitas for several reasons.  First, Jendrusch is inapposite because Freitas was not charged with engaging in conduct proscribed by different sections of HRS § 711-1101, but was only charged with making unreasonable noise, in violation of HRS § 711-1101(b).

Second, unlike in Jendrusch, the same conduct or action in this case (i.e. playing loud music) satisfies the alternative requirements under the statute for "unreasonable noise."  That is, in this case, the single act of playing loud music was both

---

[4] In Jendrusch, the defendant was charged under both subsection 1(b) and 1(c) of the disorderly conduct statute, which then stated in part:

> (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, he:
>
> (b) Makes unreasonable noise; or
>
> (c) Makes any offensively coarse utterance, gesture, or display, or addresses abusive language to any person present, which is likely to provoke a violent response; . . . .

HRS § 711-1101 (Supp. 1974).

> The charge as presented to Jendrusch stated:
>
> You (Jendrusch) are hereby charged that in the City and County of Honolulu, State of Hawaii, on or about the 14th day of September, 1974, with intent to cause public inconvenience, annoyance or alarm by members of the public or recklessly creating a risk thereof, you did make unreasonable noise or offensively coarse utterance, gesture or display or address abusive language to any person present, thereby committing the offense of Disorderly Conduct in violation of Section 1101(1)(b) of the Hawaii Penal Code.  (Emphasis added)

Jendrusch, 58 Haw. at 280, 567 P.2d at 1243-44.

6

"a gross deviation from law-abiding citizen's conduct given the nature and purpose of [defendant's] conduct, location and time of day" as well as "a failure to heed a peace officer's warning that the noise is unreasonable and should be stopped." Therefore, this case is additionally distinguishable from Jendrusch because the use of the disjunctive alternatives for "unreasonable noise" did not create "uncertain[ty] as to which of the acts charged was being relied upon as the basis for the accusation against [defendant]." 58 Haw. at 283 n.4, 567 P.2d at 1245 n.4.

Third, where an indictment is challenged only after a conviction, a "flexible rule of liberal construction" applies under which "we must liberally construe the [charge] in favor of validity." State v. Motta, 66 Haw. 89, 93, 657 P.2d 1019, 1021 (1983). In these circumstances, the conviction will not be reversed "unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." Id. at 91, 657 P.2d at 1020; see also Wheeler, 121 Hawai'i at 399, 219 P.3d at 1186.

The charge tracked the language of the statute. See State v. Cordeiro, 99 Hawai'i 390, 406, 56 P.3d 692, 708 (2002) (noting that generally, "a charge drawn from the language of the statute proscribing the offense is not fatally defective"); see also State v. Silva, 67 Haw. 581, 585, 698 P.2d 293, 296 (1985). Freitas has made no effort to show that he has been prejudiced by the charge setting out the alternative bases for "unreasonable noise" in the disjunctive. In this regard, there is ample information in the trial record establishing that the conduct at issue was Freitas' playing music too loudly on the day of the offense and that by his playing of the loud music he failed to heed an officer's warning. The record reflects that Freitas defended against this alleged conduct. Moreover, as set forth above, because the same conduct or action (i.e. playing loud music) was the basis for either alternative establishing "unreasonable noise," no confusion was created and the charge can reasonably be construed to charge a crime.

7

We therefore reject Freitas' argument, raised for the first time on appeal, that his conviction should be reversed because the charge stated the alternatives to establish "unreasonable noise" in the disjunctive.

III.    There is Sufficient Evidence for a Conviction of Disorderly Conduct as a Violation.

The Hawaiʻi Supreme Court has often stated the standard of review for sufficiency of the evidence as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Sprattling, 99 Hawaiʻi 312, 317, 55 P.3d 276, 281 (2002) (quoting State v. Young, 93 Hawaiʻi 224, 230, 999 P.2d 230, 236 (2000)). "'[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact].'" Sprattling, 99 Hawaiʻi at 317, 55 P.3d at 281 (quoting State v. Sua, 92 Hawaiʻi 61, 69, 987 P.2d 959, 967 (1999).

Because we held above that the charge was defective in alleging a petty misdemeanor, we review the sufficiency of the evidence to support a disorderly conduct violation. Based on the testimony of Uptmor and the two police officers who responded to the complaints of the loud music, there is more than sufficient evidence to support a conviction for a disorderly conduct violation.

Uptmor, the complaining witness and next door neighbor to Freitas, testified there "was loud drumming, singing coming from the house next door" that started earlier in the day and went on until about 4 p.m. when he called police. Uptmor testified the volume was so loud that "with the doors and windows closed and the TV on, you can still hear it," that he could "feel the pounding of the drums" within his home, and that he could not get any work or anything done because the music was constant.

Prior to November 20, 2005, Uptmor had made numerous 911 calls regarding the loud music.

On November 20, 2005, Officer Hackbarth responded at approximately 3:00 p.m. to a complaint of loud noise in the area and testified that "we've had a lotta calls at this address about loud noise, especially the drumming." As he walked towards the music, Officer Hackbarth could definitely feel the music as well as hear it. Officer Hackbarth saw an open garage with a band playing and saw Freitas playing the drums and another male playing an amplified guitar. After determining the music was unreasonably loud, Officer Hackbarth informed them about the complaint, asked them to turn it down and practice the guitar without the amplifier. According to Officer Hackbarth, Freitas "told me he would turn it down, and I said okay, fine, just consider it your first warning, and I left." Officer Hackbarth gave this warning at about 3:10 p.m. He also estimated the distance from where Freitas was playing to Uptmor's home was about thirty feet.

Later that day, Officer Tjomsland was sent to the same location for a loud music complaint. Officer Hackbarth also responded. When he drove up to the house, and while at the complainant's house, Officer Hackbarth could hear "same thing, drumming, electric guitar, real loud." After getting complainant's statement, Officer Hackbarth and Officer Tjomsland went to Freitas' house. According to Officer Hackbarth, Freitas "was at a point where" he stated "I've been living here for years, arrest me" and Freitas' attitude towards the end was "like defiant."

Officer Tjomsland testified that on the day in question he was sent twice to 44-329 Kaneohe Bay Drive, once at around 1:40 p.m. and the second time after 5 o'clock. The first call was by someone who wanted to remain anonymous and upon responding, Officer Tjomsland did not hear anything and did not approach Freitas' residence. At approximately 5:45 p.m., Officer Tjomsland was dispatched and again went to the area. This time,

as soon as he got out of his car and started walking down the driveway, he could hear music. Officer Tjomsland testified that the farthest away he could hear the music was about eighty to eighty-five feet. Standing outside of complainant's house, Officer Tjomsland could hear and feel the music, describing it as "amplified" music. Officer Tjomsland went to Freitas' residence and informed Freitas that he was there because of the loud noise. According to Officer Tjomsland, Freitas responded "that he knew that we had been there before" and that "he's gonna keep playing it." Officer Tjomsland testified that "[Freitas] seemed to have a defiant conduct" and "[Freitas] told [Officer Tjomsland] he's been doing this it [sic] for years, he's gonna continue doing it." Officer Tjomsland issued Freitas a citation for disorderly conduct.

Freitas testified that he played unamplified drums for about twenty minutes around 12 p.m. or 1 p.m. According to Freitas, the first time he really played was around 3 p.m., when he played with two other people and it was not amplified. They played for an hour and "then the officer came down, and we stopped completely until my brother got there about 5:30, and that's when we played again." Freitas stated they all shared one amplifier. According to Freitas, Officer Tjomsland was reluctant to cite him. Freitas also testified that when Officer Hackbarth came to Freitas' residence earlier that day, Officer Hackbarth "didn't say anything about the noise[,]" but said "just maybe easy on the base." Freitas testified "I told 'em we're gonna play later this afternoon, he says no, you better cruise then now[;] [s]o I cruised until my brother came." According to Freitas, both Officer Hackbarth and Officer Tjomsland's comments were "more of a praise" and "[c]omplaining about the neighbor, not the music."

Viewing the evidence in the strongest light for the prosecution, the foregoing constitutes substantial evidence of a disorderly conduct violation under HRS § 711-1101.

Because the trial court found Freitas guilty of disorderly conduct as a petty misdemeanor and because the elements of the included violation are satisfied by substantial evidence, the case may be remanded for entry of a judgment of conviction on disorderly conduct as a violation. See State v. Kekuewa, 114 Hawai'i 411, 424, 163 P.3d 1148, 1161 (2007) (where a conviction is reversed because of a defective charge, "an appellate court may nevertheless remand for entry of judgment of conviction and resentencing as to any offenses adequately set forth in the [charge]").

Based on the foregoing, the judgment filed on February 2, 2007 convicting Freitas of disorderly conduct as a petty misdemeanor is vacated. The case is remanded for entry of a judgment that Freitas committed the offense of disorderly conduct as a violation.

DATED: Honolulu, Hawai'i, July 22, 2010.


On the briefs:

Deborah L. Kim
Deputy Public Defender
for Defendant-Appellant

Kathryn Smith
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

11